UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

FIRST HORIZON CORPORATION

VERSUS

KARL HOEFER and DMMS HOLDINGS, LLC

CIVIL ACTION NO. 3:26-cv-00182

JUDGE BRIAN A. JACKSON

MAGISTRATE JUDGE ERIN WILDER-DOOMES

**MEMORANDUM IN SUPPORT OF
RULE 12(b)(6) MOTION TO DISMISS**

Defendants, Karl Hoefer ("Hoefer") and DMMS Holdings, LLC ("DMMS"), respectfully submit this Memorandum in Support of their Rule 12(b)(6) Motion to Dismiss in response to the Complaint brought against them by plaintiff, First Horizon Corporation ("First Horizon"). As shown herein, the Complaint fails to state any claim and should be dismissed with prejudice.

**INTRODUCTION**

This case arises from the alleged breach of non-solicitation provisions by First Horizon's former employee, Karl Hoefer.  After Hoefer left First Horizon's employment and started a new job, First Horizon sued Hoefer and his new employer, DMMS Holdings, LLC. Seeking damages and injunctive relief, First Horizon has attempted to assert claims for alleged bad faith breach of contract, unfair trade practices, "inducement" of breach of contract, "procurement" of breach of contract, and civil conspiracy. But First Horizon states no plausible claims.

**FACTUAL ALLEGATIONS IN THE COMPLAINT**

First Horizon is a Tennessee corporation with its principal place of business in Tennessee. Complaint, Doc. 1, ¶ 1. First Horizon alleges that defendant DMMS was formed by Daryl G. Byrd ("Byrd"), Mark W. Tipton ("Tipton"), Michael J. Brown ("Brown") and Scott Price ("Price"), none of whom were made defendants. *Id.*, ¶¶ 4-6. First Horizon contends that non-parties, Byrd, Tipton,

Brown, and Price, are former executives of IBERIABANK which First Horizon acquired through a merger in 2020. *Id.*, ¶ 5. The Complaint alleges that, at some point after the merger, several non-parties, Byrd, Tipton, Brown, and Price, left First Horizon and formed DMMS. *Id.*, ¶¶ 6, 15. First Horizon alleges that DMMS intends to compete with First Horizon and "has recruited away at least twenty-seven (27) employees of [First Horizon], all of whom were former employees of Iberia" with whom non-parties Byrd, Tipton, Brown, and Price previously worked. *Id.*, ¶¶ 15-17.

First Horizon alleges that defendant Hoefer, a former First Horizon Executive Vice President and Regional President for Louisiana and Texas, "was a key initial recruiting target for Byrd and DMMS." *Id.*, ¶¶ 18, 29. It alleges that Hoefer resigned his employment with First Horizon on or about December 30, 2025 and began working for DMMS "as a consultant in the role of Senior Executive Vice President." *Id.*, ¶¶ 18, 30. It alleges that after his resignation, Hoefer became "a key recruiter of [First Horizon] bankers and employees" for DMMS and "brazenly recruited First Horizon employees across Louisiana and Texas at every level of First Horizon's hierarchy." *Id.*, ¶¶ 29, 35, 37. The Complaint alleges a purported "scheme" between Hoefer and DMMS wherein Byrd or Tipton contact First Horizon employees and refer them to Hoefer who then attempts to persuade them to leave First Horizon by allegedly offering them generous compensation packages. *Id.*, ¶¶ 36-38, 59.

The crux of First Horizon's Complaint is that Hoefer is allegedly prohibited under certain agreements (the "Grants") from directly or indirectly soliciting or hiring First Horizon employees. *Id.*, ¶¶ 20-27, 52; *see also* Exhibits A through E, attached, Docs. 1-1, 1-2, 1-3, 1-4 and 1-5. Neither the allegations of the Complaint, nor the Grants that First Horizon attached to it, reflect the existence of any non-competition agreements. The Complaint contains no facts whatsoever that

2

would give rise to any duty owed by DMMS to First Horizon not to compete with First Horizon or to solicit or hire First Horizon employees.

Notably, First Horizon urges that all "**events giving rise to this lawsuit took place in the State of Louisiana**." *Id.*, ¶ 7 (emphasis added). It also alleges that "East Baton Rouge Parish … is a place of proper venue for First Horizon's claims." *Id.*, ¶ 13. In fact, most of the specific claims of alleged solicitation by Hoefer of First Horizon employees are alleged to have occurred in Louisiana.[1] *Id.*, ¶ 46 (alleged solicitation of John Everett in Baton Rouge, Louisiana); ¶ 48 (alleged solicitation of Jake Wharton in Baton Rouge, Louisiana); ¶ 50 (alleged solicitation of Kevin Rudge in Baton Rouge, Louisiana); ¶ 51 (alleged solicitation of Brandon Boudreaux in Houma, Louisiana). Conversely, although First Horizon claims Tennessee law applies to two of its purported causes of action, the Complaint contains inadequate allegations connecting Tennessee to this controversy, other than it being the alleged domicile of First Horizon. *Id.*, ¶ 1.

Moreover, other than describing Hoefer's alleged recruitment efforts as "aggressive[ ]" and "persistent[ ]," the Complaint fails to allege any *non-conclusory* facts indicating that Hoefer was driven by some personal motive to injure First Horizon or that he acted for any purpose other than furthering the legitimate business interests of DMMS. *Id.*, ¶¶ 39, 46, 48, 50, 51. There are no *non-conclusory* allegations demonstrating malice, or which rise to the level of immoral, deceptive, fraudulent, or unethical conduct.

---

[1] The Complaint alleges that Hoefer solicited First Horizon employees "across Louisiana and Texas," but does not describe any specific conduct occurring in Texas. *Id.*, ¶ 35. Moreover, it alleges the purported solicitation of First Horizon employee Ben Marmande, but does not state specifically where Mr. Marmande worked or where the solicitation occurred. *Id.*, ¶¶ 39-45. However, to the extent Hoefer is alleged to be domiciled in Jefferson Parish, Louisiana, and that he allegedly solicited Mr. Marmande via text message and phone calls, it can be presumed the alleged solicitation purportedly occurred, at least in part, in Louisiana. *Id.*, ¶¶ 2, 39-41, 44-45.

## FIRST HORIZON'S ATTEMPTED CAUSES OF ACTION

Based on an alleged run-of-the-mill contract dispute, First Horizon unsuccessfully attempts to assert five claims against its former employee Hoefer and DMMS:

**Count I**: Bad Faith Breach of Non-Solicitation Agreement is brought against Hoefer under article 1997 of the Louisiana Civil Code. *Id.*, ¶¶ 65-73. In this Count, First Horizon asserts, in a purely conclusory manner, that Hoefer's alleged breach of the Grants "was intentional, willful, wanton, and in completely reckless disregard for the rights of First Horizon." *Id.*, ¶ 71. First Horizon contends it is entitled to "statutory relief for damages for the loss it sustained and/or profits it has been deprived of" as a result of the alleged breach. *Id.*, ¶ 70. But it also vaguely contends that it is entitled to injunctive relief for "irreparable harm, including the loss of employees, loss of customer goodwill, and loss of fair competition." *Id.*, ¶ 72. Notably, the Complaint contains no allegation of a loss of any First Horizon customer, and First Horizon's other alleged damages do not constitute "irreparable injury for which there is no adequate remedy at law." *Id.*, ¶ 73. Count I fails to state a claim for bad faith breach of contract or for injunctive relief. It should be dismissed.

**Count II**: Violation of Louisiana Unfair Trade Practices Act ("LUTPA") is also brought against Hoefer, alone. *Id.*, ¶¶ 74-86. First Horizon alleges in this attempted claim that Hoefer's alleged solicitation of First Horizon employees in breach of the Grants "amount[s] to fraud, misrepresentation, deception, breach of fiduciary duty, unscrupulous and unethical conduct" and that his alleged "actions offend public policy and are immoral, unethical, unscrupulous, malicious, and designed to cause substantial injury to First Horizon." *Id.*, ¶¶ 80, 83. Like Count I, however, these allegations are not supported by any substantive facts and are merely conclusory. Thus, Count II fails to state a claim under LUTPA and should be dismissed.

4

**Count III**: Inducement of Breach of Contract is alleged against DMMS, but not Hoefer. *Id.*, ¶¶ 87-97. First Horizon alleges that DMMS improperly "with malice" "induce[d] Hoefer to breach" the Grants and is therefore liable for the alleged damages purportedly caused by the breach. *Id.*, ¶¶ 93-95. First Horizon contends this alleged claim is governed by "Tennessee common law" even though there is not a single factual allegation in the Complaint of any wrongful conduct by DMMS in Tennessee. *Id.*, ¶¶ 88-89, 97. First Horizon puts forth the novel theory that because the Grants between Hoefer and First Horizon, *to which DMMS is not a party*, purportedly specify Tennessee law, then Tennessee law somehow applies to a claim against DMMS. *Id.*, ¶¶ 88-90. Even if this purported claim were not based solely on conclusory, rather than specific, allegations of fact, it still fails. As discussed below, Louisiana law governs and no claim for "inducement" of a breach of contract is recognized under Louisiana law under the facts presented. Accordingly, Count III should be dismissed as well.

**Count IV**: Procurement of Breach of Contract in Violation of T.C.A. § 47-50-109 is also alleged against DMMS, but not Hoefer. *Id.*, ¶¶ 98-101. Like Count III, First Horizon contends this purported claim arises under and is governed by Tennessee law. *Id.*, ¶ 99. It is based on the same conclusory allegations as Count III. *Id.*, ¶ 100. As discussed below, Louisiana law governs and First Horizon has not and cannot state a claim for an alleged violation of T.C.A. § 47-50-109 against DMMS. Accordingly, Count IV should also be dismissed.

**Count V**: Civil Conspiracy is alleged against both Hoefer and DMMS. *Id.*, ¶¶ 102-105. In this Count, First Horizon alleges that Hoefer and DMMS conspired to breach Hoefer's obligations in the Grants, and engaged "in unfair methods of competition and unfair or deceptive acts or practices in the conduct of their business in violation of LUTPA." *Id.*, ¶¶ 104-105. This claim also fails. First, as discussed below, Louisiana does not recognize a claim for conspiracy to breach a

contract. Second, routine breaches of contract are not actionable as an "unfair trade practice" and the Complaint is devoid of any substantive factual allegations to support a claim for a LUTPA violation. Count V should be dismissed as a result.

First Horizon also requests injunctive relief. *Id.*, ¶¶ 106-116. It seeks to enjoin Hoefer "and any other persons or entities acting on his behalf or in active concert with him (including but not limited to DMMS, Byrd, Tipton, and any other agents or employees of DMMS) from directly or indirectly soliciting, hiring, or encouraging any employee of First Horizon to leave the employment of First Horizon" for the duration of the "Restriction Periods" stated in Hoefer's Grants. *Id.*, ¶ 115. First Horizon also demands that Hoefer, DMMS, and anyone working with them be prohibited from communicating with any First Horizon employee. *Id.*, prayer, ¶ 1.b. This request for extraordinary relief should be rejected. Because First Horizon states no plausible claims, it is not entitled to injunctive relief.

## LAW AND ARGUMENT

### I.    APPLICABLE LEGAL STANDARDS UNDER RULE 12(b)(6).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint against the legal standard set forth in Federal Rule of Civil Procedure 8, which requires 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Jones v. Nexion Health Mgmt.*, No. 25-CV-146, 2025 WL 2797709, at *1 (M.D. La. Sept. 15, 2025) (Jackson, J.) (quoting Fed. R. Civ. P. 8(a)(2)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted)). "[F]acial plausibility' exists 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678).

6

"[T]he complaint need not set out 'detailed factual allegations,' but something 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action' is required. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "When conducting its inquiry, the Court accepts all well-pleaded facts as true and views those facts in the light most favorable to the plaintiff." *Id.* (quotation omitted). "The Court, however, does not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Purvis v. Teva Pharms, USA, Inc.*, 901 F. Supp. 2d 716, 719 (M.D. La. 2012) (Jackson, J.) (quotation omitted).

## II.    COUNT I FAILS TO STATE A CLAIM FOR BAD FAITH BREACH OF CONTRACT UPON WHICH RELIEF CAN BE GRANTED.

### A.    Applicable Legal Standards.

"An obligor in bad faith is liable for all the damages, foreseeable or not, that are a direct consequence of his failure to perform." La. Civ. Code art. 1997. "An obligor is in bad faith if he intentionally and maliciously fails to perform his obligation." *River House Partners, LLC v. Grandbridge Real Est. Cap. LLC*, No. 15-CV-58, 2015 WL 6142874, at *3 (M.D. La. Oct. 19, 2015) (Jackson, J.) (quoting La. Civ. Code art. 1997 cmt. (b)) (internal quotation marks omitted).

"Under Louisiana law, "[b]ad faith is not the mere breach of faith in not complying with a contract, **but a designed breach of it from some motive of interest or ill will**." *Fertel v. Brooks*, 02-0846, p. 15 (La. App. 4 Cir. 9/25/02), 832 So. 2d 297, 306 n.12 (*citing Williams v. Coe,* 417 So.2d 426, 430 (La. App. 1 Cir.1982)) (emphasis added). "The term bad faith means more than mere bad judgment or negligence; **it implies the conscious doing of a wrong for dishonest or morally questionable motives**." *Id.* (citing *Weysham v. Harney,* 518 So.2d 1059, 1061 (La. App. 4 Cir.1987), *writ denied,* 521 So. 2d 1172 (La. 1988)) (emphasis added). "Bad faith is an **intentional and malicious failure to perform**." *Volentine v. Raeford Farms of La., L.L.C.*, 48,219

7

(La. App. 2 Cir. 7/24/13), 121 So. 3d 742, 753, *writ denied*, 13–2493 (La. 1/17/14), 130 So. 3d 948 (emphasis added).

As conceded by First Horizon, bad faith "implies actual or constructive fraud." *Whitney Bank v. SMI Cos. Glob., Inc.*, 949 F.3d 196, 210 (5th Cir. 2020). Thus, it is not enough to allege an intentional or knowing breach of contract—the pleading must contain specific facts alleging that the breach was driven by malice, spite, ill will, immorality, dishonesty, or fraud. *See, e.g.*, *River House Partners, LLC*, 2015 WL 6142874, at *4 (Jackson, J.) (dismissing bad-faith breach-of-contract claim under Rule 12(b)(6) for failure to plausibly allege that "contractual failings were derived from a conscious doing of wrong for dishonest or morally questionable motives"). Bare allegations of "bad faith" without supporting facts will not suffice. *Claville v. Willis-Knighton Med. Ctr.*, 24-CV-1201, 2025 WL 769664, at *5 (W.D. La. Feb. 21, 2025), *report and recommendation adopted,* 24-CV-1201, 2025 WL 757592 (W.D. La. Mar. 10, 2025). Mere labels and conclusions, unsupported by actual facts, are not enough. *Twombly,* 550 U.S. at 550; *Iqbal,* 556 U.S. at 678.

**B.    Count I Should Be Dismissed.**

In the Complaint, First Horizon alleges that Hoefer intentionally breached the alleged non-solicitation provisions of the Grants when he allegedly solicited First Horizon employees to work for DMMS. While First Horizon asserts that "Hoefer's breach of contract was intentional, willful, wanton, and in completely reckless disregard for the rights of First Horizon," the Complaint contains no specific factual allegations to indicate that Hoefer breached the Grants for an improper purpose—such as malice, spite, ill will, fraud, immorality, or dishonesty.

At best, the Complaint alleges that Hoefer left his employment with First Horizon and began working in some capacity for DMMS. It alleges that he solicited First Horizon employees to go to work for DMMS, *but not once does it state that he used improper, fraudulent, dishonest,*

*or malicious means to do so*, or that he had any *malicious or spiteful motive.* Even assuming the well-pleaded, non-conclusory allegations of the Complaint to be true, which is denied, the Complaint makes clear that Hoefer was interested only in promoting the business of DMMS—he did not attack First Horizon or make false claims about First Horizon in order to cause unjustified injury to First Horizon. Doc. 1, ¶¶ 39-51. Allegedly conveying a "detailed pitch" for DMMS and making generous offers of bonuses and compensation do not amount to the kind of bad faith tactics necessary to state a claim for bad faith breach of contract under Louisiana law. *Id.* "[W]ithout more, this Court is unable to make a reasonable inference" that the "alleged contractual failings were derived from a conscious doing of wrong for dishonest or morally questionable motives." *River House Partners, LLC*, 2015 WL 6142874, at *4 (Jackson, J.).

In sum, to state a claim for a bad faith breach of contract, First Horizon had to do more than provide unsupported labels and conclusions. *See Ashcroft*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Lacking any factual allegations plausibly establishing that Hoefer acted maliciously, dishonestly, fraudulently, or immorally, Count I "has not been alleged with sufficiently plausibility and must be dismissed." *See River House Partners* 2015 WL 6142874, at *4 (Jackson, J.).

## III.   COUNT II FAILS TO STATE A CLAIM FOR VIOLATION OF LUTPA UPON WHICH RELIEF CAN BE GRANTED.

### A.   Applicable Legal Standards.

The Louisiana Unfair Trade Practices Act ("LUTPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." *Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc.*, 09-1633, p. 10 (La. 4/23/10), 35 So. 3d 1053, 1059 (quoting La. R.S. 51:1405(A)). "It has been left to the courts to decide, on a case-by-case basis, what conduct falls within the statute's prohibition." *Id.* However, as held by the Louisiana Supreme Court:

9

> **[T]he range of prohibited practices under LUTPA is extremely narrow. …**
>
> **LUTPA does not prohibit sound business practices, the exercise of permissible business judgment, or appropriate free enterprise transactions**. The statute does not forbid a business to do what everyone knows a business must do: make money. **Businesses in Louisiana are still free to pursue profit, even at the expense of competitors, so long as the means used are not egregious**. Finally, the statute **does not provide an alternate remedy for simple breaches of contract**. There is a great deal of daylight between a breach of contract claim and the egregious behavior the statute proscribes. [Citations omitted.]

*Id.* at 1060 (quoting *Turner v. Purina Mills, Inc.,* 989 F.2d 1419, 1422 (5th Cir. 1993)) (emphasis added). Thus, LUTPA is intended to reach only conduct which "offends established public policy and … is immoral, unethical, oppressive, unscrupulous, or substantially injurious." *Id.* at 1059 (quotation omitted).  As explained by the Fifth Circuit, "[t]here is a great deal of daylight between a breach of contract claim and the egregious behavior the statute proscribes." *Turner*, 989 F.2d at 1422.  In *Cheramie*, a case directly on point, the court held that the luring away of a competitor's employees, absent "fraud, misrepresentation, deception, or other unethical conduct" does not violate LUTPA. *Id.* at 1060.  Granting a motion to dismiss a LUPTA claim, the court emphasized "the interest of employees that LUPTA seeks to protect is their ability to exercise their right to change employment, even if they decide to work for a competitor." *Oncale v. CASA of Terrebonne Par., Inc.*, No.19-CV-14760, 2020 WL 3469838 at *19 (E.D. La. June 25, 2020) (quoting *Cheramie*, 35 So. 3d at 1060).  The same rationale applies here.

Consistent with its limited reach, LUTPA "shall not apply to . . . [a]ny federally insured financial institution, its subsidiaries, and affiliates . . . ." La. R.S. 51:1406(1). As explained below, First Horizon is a "federally insured financial institution" (or a subsidiary or affiliate of one). *Id.* So, the provisions of LUTPA "shall not apply" to it, and it cannot assert a LUTPA claim. *Id.*

**B.      Count II Should Be Dismissed.**

Count II fails to state a plausible claim for two independent reasons.

First, First Horizon's contention that Hoefer violated LUTPA by allegedly soliciting First Horizon employees fails for the same reason its "bad faith" breach of contract claim fails:  the Complaint contains no well-pleaded, non-conclusory allegations that Hoefer used immoral, unethical, oppressive, deceptive, unscrupulous, or fraudulent means. As held by the Louisiana Supreme Court, LUTPA is not an alternative remedy to simple breaches of contract. *Cheramie*, 35 So. 3d at 1059-60. Neither breaching a contract nor convincing employees to leave their employment to work for a competitor is in and of itself, an unfair trade practice.  *Id.* at 1060.  The Complaint contains no facts, only conclusory allegations, to support this claim; that is insufficient to survive a Rule 12(b)(6) motion. *See Ashcroft*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

Second, First Horizon cannot state a LUTPA claim because the provisions of LUTPA "shall not apply" to it. La. R.S. 51:1406(1). First Horizon Bank, an affiliate of First Horizon, is insured by the Federal Deposit Insurance Corporation ("FDIC"). *See* FDIC, *BankFind Suite: Find Insured Banks*, *First Horizon Bank*  https://banks.data.fdic.gov/bankfind-suite/bankfind/details/4977 (last visited Feb. 26, 2026).[2] First Horizon Bank is therefore a "federally insured financial institution" under La. R.S. 51:1406(1). Accordingly, because First Horizon is an affiliate of First Horizon Bank, a "federally insured financial institution," LUTPA "shall not apply to" First Horizon. La. R.S. 51:1406(1). Thus, First Horizon cannot state a plausible LUTPA claim.

Accordingly, Count II should be dismissed.

---

[2]      The Court can take judicial notice of First Horizon Bank's FDIC-insured status because that status "is readily available" on the FDIC's website, "is generally known within the territorial jurisdiction of this Court, is not subject to reasonable dispute, and bears directly on the issues under review in this action . . . ." *Buchicchio v. LeBlanc*, 656 F. Supp. 3d 643, 650 n.1 (M.D. La. 2023) (Jackson, J.), *aff'd*, No. 23-30116, 2024 WL 4603272 (5th Cir. Oct. 29, 2024).

11

## IV.    COUNTS III AND IV FAIL TO STATE CLAIMS FOR INDUCEMENT OF BREACH OF CONTRACT UPON WHICH RELIEF CAN BE GRANTED.

### A.    Tennessee Law Does Not Apply; Louisiana Law Governs This Lawsuit.

First Horizon's Counts III and IV both assert the same thing: that DMMS is liable for allegedly "inducing" Hoefer to breach his contractual obligations to First Horizon under the Grants. Doc. 1, ¶¶ 88-97; 99-101. Although all other claims are asserted under Louisiana law, First Horizon brings Count III under Tennessee common law and Count IV under Tennessee statutory law. *Id.*, ¶¶ 97, 99. Tennessee law clearly does not apply here.

When a Louisiana court is faced with an issue of conflicts of law, Louisiana's Conflict of Laws rules control. *See Arabie v. CITGO Petroleum Corp.*, 10-2605, p. 4 (La. 3/13/12), 89 So. 3d 307, 312; *see also MaddenCo Inc. v. Reed,* No. 23-CV-1391, 2025 WL 2715256, at *7 (M.D. La. Sept. 23, 2025) (Jackson, J.). Under Louisiana law:

> Except as otherwise provided in this Title, **an issue of delictual or quasi-delictual obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue**.
>
> That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the **pertinent contacts of each state to the parties and the events giving rise to the dispute, including the place of conduct and injury**, the domicile, habitual residence, or place of business of the parties, and the state in which the relationship, if any, between the parties was centered; and (2) the policies referred to in Article 3515,[3]

---

[3]    Article 3515 provides the general rule:

> Except as otherwise provided in this Book, an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
>
> That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.

> as well as the policies of deterring wrongful conduct and of repairing the consequences of injurious acts.

La. Civ. Code art. 3542 (emphasis added). These factors, and those in article 3515 are non-exclusive. *Arabie*, 89 So. 3d at 315.

In *Arabie v. CITGO*, plaintiffs brought claims for personal injuries against CITGO as a result of an oil spill that occurred in Lake Charles, Louisiana. 89 So. 3d at 310-11. It was undisputed that the site of the injuries was Louisiana. Yet, the trial court held that Texas or Oklahoma law applied to plaintiffs' claims for punitive damages and awarded same. *Id.* at 311. The appellate court affirmed finding that Texas was the domicile of CITGO and that Texas allows punitive damages. *Id.*

On review, the Louisiana Supreme Court reversed, stating that the trial court failed to consider all relevant factors and could not hang its decision solely on the domicile of CITGO. Rather, it should have considered that CITGO operated the refinery in question in Louisiana, which was one of the largest in the state. *Id.* at 316-17. It also failed to consider that all plaintiffs resided in and were employed in Louisiana. *Id.* at 316. There was no evidence, conversely, that either Texas or Oklahoma had any contacts with the plaintiffs. As stated "**Texas, then, had contact only with CITGO, while Louisiana had contacts with all parties**" which "favors the imposition of Louisiana law. *Id.* at 317 (emphasis added).

While the district court found that certain corporate and managerial decisions that allegedly contributed to the accident were made at CITGO's corporate headquarters in Texas or Oklahoma, these facts did not "outweigh [the] tortious activity which occur[red] locally" in Louisiana such that the location of this decision-making could be "considered the local of the injurious conduct."

---

La. Civ. Code art. 3515.

*Id.* The Court found the trial court also ignored other facts and failed to consider that the "only contact between the parties [plaintiffs and CITGO] was the spill, which occurred in Louisiana and caused plaintiffs' injuries in Louisiana." *Id.* at 318. Thus, the Court held that Louisiana law had to be applied. *Id.*; *see also Am.'s Favorite Chicken Co. v. Cajun Enters., Inc.*, 130 F.3d 180, 183 (5th Cir. 1997) (finding under Louisiana's pre-codification conflicts law that a claim for tortious interference for conduct that occurred in Louisiana would be governed by Louisiana law as the state with the most significant relationship).

Here, Louisiana is the state whose policies would be most seriously impaired if its law were not applied. Tennessee, conversely, has no substantial relationship with the parties or this dispute. The only contacts Tennessee has with this dispute is that it is allegedly the place of domicile and place of business of First Horizon; the Grants between Hoefer and First Horizon (to which DMMS is not a party) allegedly contain Tennessee choice of law clauses; and that the "effects" of Hoefer's alleged breach of contract were "felt by First Horizon … at its headquarters in Tennessee." *See* Doc. 1, ¶¶ 1, 14, 90, 96. But First Horizon's only breach of contract claim against Hoefer is asserted under Louisiana law, so these facts are irrelevant to its tort claims against DMMS. *Id.*, ¶¶ 66-67.

Conversely, Louisiana has the most significant and substantial contacts with the parties and this dispute. Although domiciled in Tennessee, First Horizon did and does business in Louisiana, and its causes of action all arise directly out of the business it did in Louisiana. *Id.*, ¶¶ 14, 15, 18, 19. DMMS and Hoefer are alleged to be domiciled in Louisiana. *Id.*, ¶¶ 2, 3, 7. DMMS's offices are alleged to be located in Louisiana. *Id.*, ¶ 3. Hoefer is alleged to have worked for First Horizon in Louisiana and Texas. *Id.*, ¶¶ 18-19. First Horizon specifically alleges that all "events giving rise to this lawsuit took place in the State of Louisiana" and, as a result, the Middle District of Louisiana

14

is the proper venue. *Id.*, ¶¶ 7, 13. The specific conduct at issue, namely the solicitation of First Horizon employees, is alleged to have occurred in Louisiana. ¶¶ 46, 48, 50, 51. The Complaint, notably, contains no allegations of any solicitation or other wrongful conduct occurring in Tennessee.

For all these reasons, this Court should conclude that Louisiana law, not Tennessee law, applies to First Horizon's Counts III and IV against DMMS.

**B.    No Claim for "Inducement" of a Breach of Contract Is Stated Under Louisiana Law.**

**1.    Louisiana's Narrow Claim Under *Spurney*.**

Until 1989, Louisiana did not recognize any "cause of action for inducing a breach of contract." *See Moss v. Guarisco*, 409 So. 2d 323, 330 (La. App. 1 Cir. 1981), *writ denied,* 412 So. 2d 540 (La.1982), *abrogated by 9 to 5 Fashions, Inc. v. Spurney*, 538 So. 2d 228 (La. 1989). The Louisiana Supreme Court recognized a very narrow claim available only under limited circumstances in *9 to 5 Fashions, Inc. v. Spurney* holding:

> … an officer of a corporation owes an obligation to a third person having a contractual relationship with the corporation to **refrain from acts intentionally causing the company to breach the contract or to make performance more burdensome, difficult or impossible or of less value to the one entitled to performance, unless the officer has reasonable justification for his conduct**. The officer's action is justified, and he is entitled to a privilege of immunity, if he acted within the scope of his corporate authority and in the reasonable belief that his action was for the benefit of the corporation.
>
> Thus, an officer is privileged to induce the corporation to violate a contractual relation, or make its performance more burdensome, provided that the officer does not exceed the scope of his authority or **knowingly commit acts that are adverse to the interests of his corporation**. Where officers knowingly and intentionally act against the best interest of the corporation or outside the scope of their authority, they can be held liable by the party whose contract right has been damaged.

15

*9 to 5 Fashions*, 538 So. 2d at 231. The action requires that the plaintiff plead and prove the following separate elements:

> (1) the existence of a contract or a legally protected interest between the plaintiff and the corporation; (2) the corporate officer's knowledge of the contract; (3) the officer's intentional inducement or causation of the corporation to breach the contract or his intentional rendition of its performance impossible or more burdensome; (4) absence of justification on the part of the officer; (5) causation of damages to the plaintiff by the breach of contract or difficulty of its performance brought about by the officer.

*Id.* at 234. Absent factual allegations relative to each of these elements, a claim for tortious interference with contract must fail. *Magnolia Fin. Grp. v. Antos,* No. 15-CV-1744, 2016 WL 740714, at *3 (E.D. La. Dec. 22, 2016).

The Court made clear that it did not "adopt whole and undigested the fully expanded common law doctrine of interference with contract." *Spurney*, 538 So. 2d at 234. Thus, subsequent Louisiana courts have declined to extend the cause of action recognized in *Spurney* beyond its parameters. The *Spurney* holding "has been restricted to the precise cause of action it explicates: 'a situation involving a corporation, an officer of the corporation, and a contract between the corporation and a third party.'" *Id.*

In *M & D Mineral Consultants, LLC v. Wenting Li*, CIV.A. 12-2082, 2013 WL 883689, at *1 (W.D. La. Mar. 7, 2013), the district court declined to apply *Spurney* to the manager of a limited liability company. In a similar vein, in *Am.'s Favorite Chicken Co. v. Cajun Enterprises, Inc.*, 130 F.3d 180, 185 (5th Cir. 1997), the Fifth Circuit found that the district court correctly declined to allow a *Spurney* claim to proceed against corporate defendants because the claim is limited to a corporate officer's duty not to interfere. Most recently, in *MaddenCo Inc. v. Reed*, CV 23-01391-BAJ-SDJ, 2025 WL 2715256, at *6 (M.D. La. Sept. 23, 2025), this Court emphasized that a

16

*Spurney* claim is recognized in Louisiana only where a corporate officer causes "*his own corporation*" to breach a contract between "*his own corporation*" and the plaintiff (quoting *Matrix Essentials, Inc. v. Emporium Drug Mart, Inc., of Lafayette*, 988 F.2d 587 (5th Cir. 1993)). These facts are not alleged here. First Horizon has not alleged that Hoefer caused "his own corporation," DMMS to breach a contract with it.

### 2. First Horizon Has Not Stated a Claim Under *Spurney*.

For the reasons stated above, Louisiana law, not Tennessee, applies to First Horizon's claims against DMMS in Counts III and IV. As a result, First Horizon cannot state a cause of action under T.C.A. § 47-50-109 against DMMS. Accordingly, Count IV should be dismissed.

First Horizon's Count III also fails to state a claim for contractual interference or inducement of a breach under the narrow circumstances of a *Spurney*. First, DMMS is a limited liability company and the law is clear that a claim for tortious interference with contract "cannot be maintained against a corporate entity defendant." *Rahman v. Allstate Ins. Co.,* 644 F.Supp.3d 231, 243 (E.D. La. 2022) ("Louisiana courts and federal courts applying Louisiana law have made clear that claims for tortious interference with contract cannot be maintained against corporate defendants."). Second, First Horizon has not, and cannot, allege that Hoefer caused DMMS to breach, without justification, a contract between DMMS and First Horizon. There is, in fact, no contract between DMMS and First Horizon. And it is clear from the allegations of the Complaint that whatever Hoefer is alleged to have done in purported breach of his own contracts with First Horizon, his actions were not adverse to the interests of "his corporation," DMMS. Accordingly, even assuming the facts alleged in the Complaint to be true, First Horizon has not stated a claim under Louisiana law for contractual interference or inducement of a breach of contract. Count III must be dismissed.

17

**V.    COUNT V FAILS TO STATE A CLAIM FOR CIVIL CONSPIRACY UPON WHICH RELIEF CAN BE GRANTED.**

**A.    Applicable Legal Standards.**

First Horizon has failed to state a claim under Louisiana law for civil conspiracy. Under Louisiana law, "[h]e who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act." La. Civ. Code art. 2324. Louisiana law is well-settled that "a conspiracy claim under article 2324 will only lie **if the underlying act is tortious (and not contractual or quasi-contractual) in nature**." *Louisiana v. Guidry*, 489 F.3d 692, 705 (5th Cir. 2007) (emphasis added). In *Guidry*, the Fifth Circuit held that under article 2324 "Louisiana courts continue to recognize that [the article's] application **is limited to conspiracies involving tortious conduct**." *Id.* at 707 (emphasis added). Where the State's cause of action was for conspiracy to breach a fiduciary duty, which is a semi-contractual obligation, no cause of action would lie under Louisiana law and the claim was properly dismissed by the district court in *Guidry* as "lacking an essential element – an underlying tort." *Id.*; *see also Shargian v. Shargian,* 591 F.Supp.3d 100, 112 (E.D. La. 2022) (where "plaintiff has not alleged a plausible tort claim, he does not have a claim for conspiracy to commit such a tort").

**B.    Count V Should Be Dismissed.**

Under Count V, First Horizon alleges that Hoefer and DMMS "conspired" to breach Hoefer's contractual obligations to First Horizon under the Grants. Doc. 1, ¶¶ 102-105. Louisiana law does not recognize a claim for conspiracy to breach a contract. La. Civ. Code art. 2324; *Guidry*, 489 F.3d at 707. *See also First Fed. Sav. Bank of New Orleans v. GAB Business Services, Inc.*, No. 87-CV-3885, 1987 WL 18163, at *1 (E.D. La. Oct. 1, 1987) ("Louisiana Civil Code Article 2324, which imposes joint liability between a person committing an unlawful act and a party who causes, encourages, or assists in the commission of the act, does not refer to the act of breach of

18

contact."). Because Louisiana law does not recognize a claim for conspiracy to breach a contract and, that deficiency cannot be cured by amendment, First Horizon's claim should be dismissed with prejudice.

Moreover, to the extent that First Horizon also alleges that the parties "conspired" to violate LUTPA, the claim fails. As shown in Part III above, the Complaint lacks substantive factual allegations of conduct sufficient to rise to the level of an unfair trade practice. The mere allegation of a breach of contract does not suffice. Further, absent a plausible tort claim, a claim for conspiracy to commit that tort also fails. *Shargian,* 591 F.Supp.3d at 112. Accordingly, Count V should be dismissed.

## VI.    THE REQUEST FOR INJUNCTIVE RELIEF FAILS FOR LACK OF AN UNDERLYING SUBSTANTIVE CLAIM.

### A.    Applicable Legal Standards.

"Generally, a request for injunctive relief is not considered an independent 'cause of action,' but rather a remedy sought to redress the wrongs alleged in the underlying substantive claims." *La. Crisis Assistance Ctr. v. Marzano-Lesnevich*, 878 F. Supp. 2d 662, 669 (E.D. La. 2012) (citations omitted). Accordingly, a request for injunctive relief "must" be rejected if a plaintiff's "underlying claims fail." *See Am. Biocarbon, LLC v. Keating*, No. 20-CV-259, 2020 WL 7264459, at *7 (M.D. La. Dec. 10, 2020) (Jackson, J.).

### B.    First Horizon's Claim for Injunctive Relief Should Be Dismissed.

Here, because First Horizon fails to state any plausible substantive claims, its request for injunctive relief "must" be rejected. *See id.*

## CONCLUSION

For the foregoing reasons, the Rule 12(b)(6) Motion filed by defendants, Karl Hoefer and DMMS Holdings, LLC, should be granted and the Complaint filed against them by plaintiff, First Horizon Corporation, should be dismissed with prejudice.

Respectfully submitted,

/s/ Thomas M. Flanagan
Thomas M. Flanagan, T.A. (#19569)
Anders F. Holmgren (#34597)
Alixe L. Duplechain (#39167)
Jordan B. Redmon (#37272)
FLANAGAN PARTNERS LLP
201 St. Charles Avenue, Suite 3300
New Orleans Louisiana 70170
Telephone: (504) 569-0235
Facsimile: (504) 592-0251
tflanagan@flanaganpartners.com
aholmgren@flanaganpartners.com
aduplechain@flanaganpartners.com
jredmon@flanaganpartners.com

*Attorneys for defendant, Karl Hoefer*

/s/Joelle F. Evans
Kyle Schonekas, T.A. (#11817)
Joelle F. Evans (#23730)
Andrea V. Timpa (#29455)
Benjamin O. Flaxenburg (#37682)
SCHONEKAS EVANS McGOEY & McEACHIN, LLC
909 Poydras Street, Suite 1600
New Orleans, Louisiana  70112
Telephone:  504-680-6050
Facsimile:  504-680-6051
kyle@semmlaw.com
joelle@semmlaw.com
andrea@semmlaw.com
benjamin@semmlaw.com

*Attorneys for defendant, DMMS Holdings, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on February 26, 2026, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/Joelle F. Evans
JOELLE F. EVANS