FIRST HORIZON CORPORATION

          Plaintiff                                 Civil Action No. 26-cv-00182-BAJ-EWD

versus                                       District Judge Brian A. Jackson

                                           Magistrate Judge Erin Wilder-Doomes

KARL HOEFER and DMMS HOLDINGS, LLC

          Defendants.

## PLAINTIFF FIRST HORIZON CORPORATION'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Plaintiff First Horizon Corporation ("Plaintiff" or "First Horizon") submits this Opposition to Defendants Karl Hoefer ("Hoefer") and DMMS Holdings, LLC's ("DMMS") Rule 12(b)(6) Motion to Dismiss.[1] First Horizon notes that, while Defendants jointly filed the present motion, the only claims First Horizon asserts against them jointly are the Unfair Trade Practices claim (Count II) and the civil conspiracy claim (Counts V). First Horizon asserts a bad-faith breach of contract claim (Count I) only against Hoefer and the inducement of breach of contract under Tennessee law (Counts III and IV) against DMMS. For the reasons set forth below, Plaintiff respectfully urges the Court to deny Defendants' Motion to Dismiss.

## I.     INTRODUCTION

As set forth in great detail in First Horizon's Complaint, Hoefer breached non-solicitation obligations to First Horizon in bad faith and in concert with DMMS by conducting an unethical raid of employees to injure First Horizon that also violates the Louisiana Unfair Trade Practices Act ("LUTPA") and Tennessee law. The Complaint details Hoefer's extensively planned recruitment of First Horizon employees immediately after Hoefer left First Horizon, Hoefer and

---

[1] R. Doc. 7. The singular Motion to Dismiss is filed on behalf of both Defendants.

DMMS's attempt to circumvent his contractual obligations to First Horizon, the company history and circumstances showing Hoefer and DMMS's intention to target First Horizon's employees for a soon-to-be established bank, and Hoefer denying his role in the recruitment despite the myriad of evidence First Horizon obtained from its employees blatantly contradicting Hoefer's representations. The Complaint plausibly states claims for bad faith breach of contract and violations of LUTPA because it details Hoefer's and DMMS's extensive planning, intent, deception, and persistence in targeting First Horizon employees for employment with DMMS using Hoefer as the lead recruiter but initiating contact through other DMMS principals. The Complaint also sufficiently alleges claims for violations of Tennessee law, which applies to those claims under Louisiana's choice-of-law principles. Defendants' Motion to Dismiss must be denied because it concedes the Complaint states a claim for breach of contract, overlooks extensive well-pleaded facts showing Hoefer and DMMS's bad faith breach of contract and unethical conduct in violation of LUTPA, misstates the application of LUTPA's exemption for federally insured financial institutions, and incorrectly asserts Louisiana law must apply to all claims and issues in this action.

## II.    LAW AND ARGUMENT

Accepting its well-pleaded facts as true and viewing them "in the light most favorable to the plaintiff," the Complaint plausibly states claims for bad faith breach of contract by Hoefer, violations of LUTPA by Hoefer and DMMS, violations of Tennessee law by DMMS, civil conspiracy, and injunctive relief. *Jones v. Nexion Health Mgmt.*, No. CV 25-00146-BAJ-SDJ, 2025 WL 2797709, at *1 (M.D. La. Sept. 15, 2025)(citing *Bustos v. Martini Club Inc.,* 599 F.3d 458, 461 (5th Cir. 2010)).

**A. Defendants Do Not Dispute First Horizon States a Valid Breach of Contract Claim**

Count I of First Horizon's Complaint sets forth a claim for bad-faith breach of contract. First Horizon contends that (i) Hoefer breached his non-solicitation agreement, and (ii) he did so in bad faith.

Notably, Hoefer's motion does not challenge the breach of contract claim itself, perhaps because he does not dispute the fact that he breached his non-solicitation agreement, or perhaps because he realizes that the claim, as pled, is more than sufficient to withstand a motion to dismiss. Regardless of the reason, the motion addresses <u>only</u> the bad-faith element of the claim. Notwithstanding that fact, Hoefer asks this Court to dismiss the bad-faith breach of contract claim <u>in its entirety</u>. However, even assuming arguendo that the Complaint did not sufficiently plead bad faith (which First Horizon vehemently denies), the law is clear that a dismissal of the bad-faith element, which would impact only the types of damages First Horizon may recover for the breach of contract, does not necessitate dismissal of the breach-of-contract claim.

"[J]udicial determination of good-faith (or bad-faith) failure to perform a conventional obligation is always preceded by a finding that there was a failure to perform, or a breach of the contract." *Favrot v. Favrot*, 68 So. 3d 1099, 1110 (La. App. 4 Cir. 2011). Essentially, whether an obligor has breached a contract and whether he did so in bad faith are two separate and distinct inquiries. This Court observed the same in *River House Partners, LLC v. Grandbridge Real Est. Cap. LLC*, where the plaintiff claimed the defendant breached an agreement to obtain secure a HUD-insured loan for plaintiff's multi-family development and sought damages under La. C.C. art. 1997 for defendant's bad faith breach of the agreement.. No. CV 15-00058-BAJ-RLB, 2015 WL 6142874, at *1, 3-4 (M.D. La. Oct. 19, 2015). In ruling on a motion to dismiss under Rule 12(b)(6), this Court, based on the allegations presented in that case, partially granted the motion

to dismiss plaintiff's claim for bad faith damages under La. Civ. Code art. 1997 while leaving the breach of contract claim intact.

In this matter, Hoefer has not challenged whether First Horizon's Complaint states a claim that he breached his employee non-solicitation agreement, nor could he. "The central elements of a breach of contract action are the existence of a contract, a party's breach thereof, and damages." *JMF Med., LLC v. Team Health, LLC*, 490 F. Supp. 3d 947, 973 (M.D. La. 2020)(quoting *Favrot*, 68 So. 3d at 1109). In Count I of the Complaint, First Horizon summarized its extensive allegations concerning breach of contract as follows: "Hoefer breached the employee non-solicitation provisions in the Grant Notices and governing incentive plans by recruiting and making job offers to First Horizon employees, encouraging them to leave First Horizon and begin employment with a competitor, DMMS Holdings LLC, during the applicable two (2) year Restriction Periods," and seeks "damages for the loss it sustained and/or profits it has been deprived of as the result of Hoefer's breach of his employee non-solicitation restrictions."[2] While Hoefer seeks dismissal of Count I its entirety, his request must be rejected because the motion fails to address the foregoing allegations regarding breach of contract. As discussed below, by moving to dismiss only the "bad faith" element of the claim, Hoefer merely contests the kinds of damages First Horizon can recover, *i.e.*, whether First Horizon is entitled to all damages, whether foreseeable or not, that are a direct consequence of Hoefer's failure to perform (see Louisiana Civil Code Article 1997 ("Obligor in bad faith")), or limited to only those damages that were foreseeable at the time the contract was made (see Louisiana Civil Code Article 1996 ("Obligor in good faith")).

---

[2] R. Doc. 1, ¶¶ 69, 70.

The allegations in First Horizon's Complaint sufficiently state a claim for breach of contract. To the extent Hoefer's motion seeks dismissal of First Horizon's contract claim, this Court should deny the motion.

### B. Count I of the Complaint Sufficiently Alleges Bad Faith Breach of Contract

The only issue Hoefer raises as to Count I is whether First Horizon pleaded sufficient facts showing that Hoefer breached his non-solicitation obligations in bad faith to entitle First Horizon to damages under Louisiana Civil Code article 1997. Louisiana law requires each party to a contract to perform and fulfill the terms of the contract in good faith. La. Civ. Code art. 1983. An obligor in good faith is liable only for the damages that were foreseeable at the time the contract was made. La. Civ. Code art. 1996. On the other hand, an obligor in bad faith is liable for all the damages, foreseeable or not, that are a direct consequence of his failure to perform. La. Civ. Code art. 1997.

An obligor breaches a contract in bad faith "if he intentionally and maliciously fails to perform his obligation." *Whitney Bank v. SMI Companies Glob., Inc.*, 949 F.3d 196, 210 (5th Cir. 2020) (quoting La. Civ. Code art. 1997 cmt. b.). This Court characterized bad faith as being "a designed breach of it from some motive of interest or ill will," as well as a "conscious doing of a wrong for dishonest or morally questionable motives." *River House Partners*, No. CV 15-00058-BAJ-RLB, 2015 WL 6142874, at *3 (relying upon *Williams v. Coe*, 417 So.2d 426, 430 (La. App. 1 Cir. 1982) and *Volentine v. Raeford Farms of Louisiana, L.L.C.*, 48,219, p. 19 (La. App. 2 Cir. 7/24/13); 121 So.3d 742, 753)). The Fifth Circuit in *Whitney Bank* observed that bad faith "generally implies actual or constructive fraud or a refusal to fulfill contractual obligations, not an honest mistake as to actual rights or duties." *Whitney Bank*, 949 F.3d at 210 (quoting *Delaney v. Whitney Nat'l Bank*, 703 So. 2d 709, 718 (La. App. 4 Cir. 1997)).

"A complete catalog of types of bad faith is impossible, but the following types are among those which have been recognized in judicial decisions: evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance." *Cooper v. Louisiana Organ Procurement*, 146 So. 3d 908, 911 (La. App. 2 Cir. 2014), writ denied, 157 So. 3d 1109 (La. 2015).

In its motion, Hoefer attempts to couch First Horizon's claim as nothing more than "unsupported labels and conclusions". More specifically, Hoefer contends that:

> . . . [t]he Complaint contains no specific factual allegations to indicate that Hoefer breached the Grants for an improper purpose – such as malice, spite, ill will, fraud, immorality, or dishonesty.
>
> At best, the Complaint alleges that Hoefer left his employment with First Horizon and began working in some capacity for DMMS. It alleges that he solicited First Horizon employees to go to work for DMMS, *but not once does it state that he used improper, fraudulent, dishonest, or malicious means to do so, or that he had any malicious or spiteful motive*.

Defs. Motion at p. 8-9 (italics in original). These blanket statements by Hoefer completely ignore the multitude of facts alleged in the Complaint clearly showing that Hoefer used improper means and had a spiteful motive in breaching his agreement with First Horizon.

Contrary to Hoefer's contention, First Horizon indeed alleges that Hoefer used improper means and had a spiteful motive. Immediately upon his resignation, and without any compunction, Hoefer began soliciting First Horizon employees in direct violation of his non-solicitation agreement. He and DMMS's scheme of having Tipton or Byrd make initial contact and immediately handing them off to Hoefer is nothing short of a charade. Hoefer served as the sole recruiter and point of contact, personally pitched First Horizon employees, stayed in continual contact with the target employees throughout the process, communicated job offers for

employment with DMMS, and was the person to whom employees expressed their acceptance or declination of the offers.[3]

Hoefer may claim that he was "interested only in promoting the business of DMMS", see Defs. Motion at p. 9, but the facts in the Complaint reveal that Hoefer's (and DMMS's) conduct was by no means "honest" competition. Rather, Hoefer "promoted" the business by brazenly soliciting First Horizon's employees despite being fully aware that such conduct was contractually prohibited -- and then lying about it to First Horizon. As set forth in the Complaint, Hoefer, in response to a cease-and-desist letter sent by First Horizon, represented that he had "not directly or indirectly solicited, hired or encouraged" any First Horizon employees, including Brandon Boudreaux, to leave First Horizon, and that "[t]o [his] knowledge, Mr. Boudreaux left FHC on his own accord."[4] These representations are blatantly contradicted by the very First Horizon employees that Hoefer solicited, including Brandon Boudreaux, who told First Horizon before he left that Hoefer "pushed so hard" that it was impossible to tell him "no".[5]

Indeed, this is not a case involving a simple knowing breach of a non-solicitation agreement. Rather, this is a case involving conscious deceit whereby Hoefer and DMMS were well aware of Hoefer's post-employment obligations, yet purposely sought to evade those obligations through a transparent scheme that in fact, fooled no one. As set forth in the Complaint, DMMS would make the initial "contact" with First Horizon's employees, advising them to call Hoefer for more information, at which point Hoefer would forcefully recruit away because (according to him and DMMS) he was not the one to make the initial contact with the employees. In fact, the target First Horizon employees were told by Byrd and Tipton that Hoefer could not

---

[3] R. Doc. 1, ¶¶ 37, 47, 49-51.
[4] R. Doc. 1, ¶ 53-55.
[5] R. Doc. 1, ¶ 51.

make the first call to him, but that if they had any questions to call Hoefer.[6] As further evidence of this deceit, when caught in this scheme, Hoefer blatantly lied about it, seeking to cover his and DMMS's tracks.[7] This artifice exemplifies bad faith in every way imaginable.

Even more telling of Hoefer's ill will is the fact that he advised First Horizon employees that if they were to leave First Horizon and join DMMS, DMMS would indemnify them for any damages or losses they were to incur if they were found to have breached their non-solicitation agreements.[8] Hoefer's assurance to these employees that they did not have to worry about breaching their own non-solicitation agreements because DMMS would indemnify them if they did is the epitome of bad faith.

In addition to all the above, Hoefer demonstrated his spitefulness, dishonesty and questionable motives by solely targeting former IBERIABANK employees whom Hoefer had worked with and managed at both IBERIABANK and First Horizon. He clearly hand-picked the employees he wished to recruit to DMMS and took advantage of and preyed on those employees' loyalties to him, allowing him to more successfully recruit in knowing violation of his non-solicitation obligations.[9] He and DMMS's coordinated raid indicates a desire to seize back for themselves the goodwill and relationships they transferred to First Horizon in the IBERIABANK merger.[10]

This type of conduct set forth in the Complaint does not evince "an honest mistake" by Hoefer "as to [his] actual rights or duties." *Whitney Bank*, 949 F.3d at 210. Rather, his conduct evidences a conscious, dishonest and immoral disregard of his restrictive covenant obligations of

---

[6] R. Doc. 1, ¶¶36-38, 40, 46, 49, 50.
[7] R. Doc. 1, ¶¶53-56.
[8] R. Doc. 1, ¶¶ 41, 50 and 57.

which he was fully aware.  Hoefer intentionally refused to abide by his non-solicitation obligations. His actions demonstrate a designed breach and a calculated undertaking to aggressively target and raid as many talented former IBERIABANK employees as he could. The Complaint's well-pleaded facts plausibly and sufficiently allege that Hoefer has ill will toward First Horizon and states a claim for bad faith breach of contract.

### C.  First Horizon States a Claim for Violations of LUTPA

First Horizon's Complaint advances two independent grounds for a LUTPA claim against Hoefer and DMMS: (1) Defendants' charade and scheme to intentionally violate Hoefer's non-solicitation covenants constitute an unfair method of competition and/or unfair or deceptive active or practice; and (2) Hoefer's bad-faith breach of contract, along with DMMS's complicity, further constitutes an unfair or deceptive active or practice.

In their Motion to Dismiss, Defendants contend, as they did in regard to First Horizon's bad-faith breach of contract claim, that they engaged only in "fair competition" and that "the Complaint contains no well-pleaded, non-conclusory allegations that Hoefer used immoral, unethical, oppressive, deceptive, unscrupulous or fraudulent means" to solicit First Horizon's employees (in direct contravention of Hoefer's restrictive covenants).  Defs. Mot. At 10-11. Defendants also contend that La. R.S. 51:1406 bars First Horizon, as a federally insured financial institution, from asserting a LUTPA claim against the Defendants.  As set forth more fully below, Defendants' arguments have no merit.

### 1.  First Horizon Has Sufficiently Pleaded Violations of LUTPA

Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful. La. R.S. 51:1405(A). "A business practice is considered 'unfair' if it offends established public policy and is unethical, oppressive, unscrupulous, or

substantially injurious. A business practice is 'deceptive' for purposes of LUTPA when it amounts to fraud, deceit or misrepresentation." *Surgical Care Ctr. of Hammond, L.C. v. Hosp. Serv. Dist. No. 1 of Tangipahoa Par.*, 309 F.3d 836, 843 (5th Cir. 2002) (citing *Jefferson v. Chevron U.S.A. Inc.*, 713 So.2d 785, 792–93 (La.1998)).

In affirming that LUTPA extends to and regulates a business's conduct towards its competitors, the Louisiana Supreme Court recognized that recruiting at-will employees and encouraging them to resign their employment or join a competitor violates LUTPA if the recruitment involves either "an unlawful or improper purpose" or the use of "unlawful or improper means." *Cheramie Servs. v. Shell Deepwater Prod.,* 35 So. 3d 1053, 1060 (La. 2010).

Ironically, Defendants' rely on *Cheramie* to support their motion to dismiss, when in fact, the case illustrates precisely why its motion to dismiss should be denied. In *Cheramie*, the plaintiff had a staffing agreement to supply workers for an oil company's offshore platform. *Id.* at 1054-55. When interviewing a worker sent by plaintiff for an open position, the oil company (Shell) told the worker that, if they wanted the job with the oil company, they had to work for a competitor staffing agency (Filco) since Filco, not Cheramie, had submitted the successful bid to Shell. *Id.* at 1055. The worker promptly resigned her employment with the plaintiff and signed up with the competitor staffing company. *Id.* Cheramie filed suit, and following discovery, Shell filed a motion for summary judgment on the LUTPA claim. The trial court granted the motion, but the LUTPA claim was reinstated on appeal. That ruling was then reviewed by the Louisiana Supreme Court.

In reversing the appellate court's order reinstating the LUTPA claim, the Louisiana Supreme Court noted that "at-will employees are free to exercise their right to change employment, even if they decide to work for a competitor of their former employer. . . . A corollary to this

principle is the general rule denying the liability of competitors who lure away at-will employees, in the absence of a showing that the competitor had an unlawful or improper purpose or used unlawful or improper means." *Id.* at 1060 (emphasis added). Ruling in favor of Shell, the court found no evidence that Shell and Filco "colluded" to "steal" Cheramie's employees, and that in fact, "Perez's employment with Filco derived from the fact that Filco, not Cheramie Services, was the successful bidder for the Ursa TLP position." *Id.* at 1061.

Unlike the facts in *Cheramie* where the insufficient evidence prevented the court from finding Shell employed unlawful or improper means to lure an employee away, here, First Horizon has pled numerous facts clearly showing that Hoefer (in collusion with DMMS) employed such unlawful and improper means by recruiting employees in direct contravention of Hoefer's restrictive covenants. First Horizon is not basing its LUTPA claim on the mere fact that some of its employees decided to leave for a competitor; First Horizon acknowledges that at-will employees are generally free to change jobs and move to a competitor. Rather, First Horizon is basing its claim on the fact that Hoefer conspired with DMMS to recruit employees in blatant violation of Hoefer's non-solicitation agreement and offered to indemnify those employees should they be found to have violated their own non-solicitation obligations. Hoefer was not engaging in "fair" competition; he was unlawfully and improperly recruiting employees despite being contractually prohibited from doing so. The issue is not the mere fact that the employees left First Horizon, but the fact that they did so as a result of unlawful and improper solicitation.

It should also be noted that the motion at issue in the *Cheramie* case was not a motion to dismiss, but rather a motion for summary judgment, which, by definition, meant that the facts as pled in that case were clearly sufficient to withstand a motion to dismiss. Even more tellingly, the plaintiff moved forward on its LUTPA claim based on facts far less compelling than those at issue

in this case. If the LUTPA claim in *Cheramie* was sufficient to withstand any motion to dismiss, certainly First Horizon should be permitted to proceed on its LUTPA claim.

Nor does the *Oncale* case relied upon by Defendants' fare any better. There, the court dealt with a matter of first impression as to whether a violation of the Family and Medical Leave Act ("FMLA") could form the basis of a LUTPA claim. The court found that the FMLA claim as pled could not, as a matter of law, support a LUTPA claim. *Oncale v. CASA of Terrebonne Parish, Inc.*, No. 19-CV-14760, 2020 WL 3469838, at *19-20 (E.D. La. June 25, 2020). The nature of the claim in *Oncale* was far different from the nature of the claim here, which is premised on a violation of a non-solicitation agreement, not the FMLA. *Compare Volt Power, LLC v. Deville*, 1:21-CV-00395, 2021 WL 1554435, at *5 (W.D. La. Apr. 20, 2021) ("At [the 12(b)(6)] stage, the Court concludes that Volt Power has alleged sufficient facts to support plausible causes of action for . . . LUTPA based on the non-competition and non-solicitation provisions of the Agreement").

Other states that similarly prohibit unfair and deceptive acts or practices have likewise found a plaintiff states a prima facie claim when a competitor causes, facilitates, induces, and/or participates in plaintiff's former employees breaching their non-solicitation covenants. *See, e.g.,* Fla. Stat. Ann. § 501.204 (West); *TriNet USA, Inc. v. Vensure Emp. Servs., Inc.*, No. 8:20-CV-2018-VMC-AAS, 2021 WL 2661108, at *7 (M.D. Fla. June 29, 2021)(allegations that defendant caused, facilitated, induced, and/or participated in former employees of plaintiff breaching their non-solicitation covenants for defendant's benefit stated a claim for relief against a competitor under the Florida Deceptive and Unfair Trade Practices Act).

Due to the inherent difficulties of proving intent, an aggrieved party is not required to offer direct evidence of a defendant's intent to deceive. Courts have held that the intent to deceive may be determined from the attending circumstances, which requires credibility determinations.

*Balthazar v. Hensley R. Lee Contracting, Inc.*, 214 So. 3d 1032, 1044-1047 (La. App. 4 Cir. 2017)("The core of Plaintiffs' alleged conspiracy and LUTPA claims are issues of motive and intent, which are subjective facts that are rarely appropriate for judicial determination on summary judgment.") (citing *Lacey v. Louisiana Coca-Cola Bottling Co.*, 452 So. 2d 162, 164 (La. 1984)).

Separately, a party's bad faith breach of contract also gives rise to a violation of LUTPA. *Volentine v. Raeford Farms of Louisiana, LLC*, 201 So. 3d 325, 353–54 (La. App. 2 Cir. 8/15/16)(defendant's bad faith termination of the contract rendered it liable under LUTPA.).

As discussed extensively above, the allegations in First Horizon's complaint demonstrate that Hoefer and DMMS utilized improper means in their transparent scheme to circumvent Hoefer's non-solicitation covenant and poach First Horizon's employees. Under *Cheramie*, such scheme between Hoefer and DMMS constitutes an unfair or deceptive act or practice that runs afoul of LUTPA.

Furthermore, DMMS and Hoefer's scheme constitutes a bad faith breach by Hoefer of his non-solicitation covenants with First Horizon, which in turn violates LUTPA. *See Volentine, supra*. The fact that DMMS participated in the scheme further makes it liable *in solido* with Hoefer. *See La. C.C. art. 2324; Brown & Root Indus. Servs., LLC v. Brown*, No. CV 21-00291-BAJ-SDJ, 2024 WL 4595597, at *8 (M.D. La. Oct. 28, 2024). Moreover, if the representation made by Hoefer's counsel in his February 6, 2026 letter was true, and Hoefer does not have the authority to hire contractors or employees for DMMS, the job offers that Hoefer freely handed out must have necessarily come from DMMS itself, further underscoring the fact that Hoefer and DMMS were in cahoots together.

DMMS also encouraged Hoefer's bad faith through their arrangement with Hoefer that DMMS promises to indemnify make Hoefer whole should he be held liable for engaging in

misconduct in recruiting First Horizon's employees. Such provision demonstrates Defendants' knowing disregard for and bad faith breach of Hoefer's legal and contractual obligations to First Horizon. Hoefer's and DMMS's actions demonstrate their intent to use any means necessary to damage First Horizon's competitive position.

Prior to filing this lawsuit, First Horizon demanded that Hoefer cease his unlawful actions, and in response, Hoefer intentionally misrepresented to First Horizon that he "has not directly or indirectly solicited ... or encouraged any" First Horizon employee to resign their employment. This misrepresentation coupled with his and DMMS's deceptive recruiting scheme constitutes an unethical business practice in violation of LUTPA.

### 2. Revised Statute 51:1406 Does Not Apply to This Matter

Defendants flagrantly oversimplify and misstate the application of LUTPA's exemption for federally insured financial institutions, asserting without citing any jurisprudence that First Horizon "cannot assert a LUTPA claim."[11] Because First Horizon is the plaintiff asserting an unfair trade practices claim, rather than defending against the claim, Revised Statute 51:1406 does not apply to this matter.

While Revised Statute 51:1406(1) provides that LUTPA "shall not apply to any federally insured financial institution," the provision serves to "exempt from LUTPA claims" and "preclude LUTPA liability for various entities, including 'federally insured financial institution." *Gulf Coast Hous. & Dev. Corp. v. Capital One*, 2016-0296, 203 So. 3d 366, 371 (La. App. 4 Cir. 10/05/16)(citing *Truong v. Bank of America, N.A.*, 717 F.3d 377, 385-386 (5th Cir. 2013)). "The history and intent behind the exemption in [Revised Statute 51:1406(1)] is to avoid duplication and exclude financial institutions which are regulated by other authorities as to unfair or deceptive

---

[11] R. Doc. 7-1, at p.10.

trade practices." *First Fin. Bank, FSB v. Butler*, 492 So.2d 503, 506 (La. App. 5 Cir. 1986). Because federally insured financial institutions are "extensively regulated with respect to unfair and/or deceptive practices under titles 12 and 51 of the United States Code," the exemption from LUTPA liability is in place so that federally insured financial institutions are not subjected to liability under LUTPA that is duplicative or inconsistent with liabilities imposed by federal law. *Id.*; *Louisiana v. Bank of Am.*, N.A., 2021 U.S. Dist. LEXIS 63286, at *17 (M.D. La. Mar. 31, 2021); *Mariche v. Wells Fargo Bank, N.A.*, 2012 U.S. Dist. LEXIS 44026, at *4-5 (E.D. La. Mar. 27, 2012); Levine v. First Nat. Bank of Com., 2006-0394 (La. 12/15/06), 948 So. 2d 1051, 1066 ("[t]o allow Dr. Levine to pursue a claim pursuant to LUTPA would enable him to circumvent federal law").

But the federally insured financial institutions exempted from LUTPA ***liability*** are not precluded from ***asserting*** LUTPA claims. The Western District of Louisiana has held federally insured financial institutions can bring claims for violations of LUTPA. *IberiaBank v. Broussard*, No. CV 6:14-02448, 2015 WL 9874145, at *1 (W.D. La. Dec. 15, 2015), report and recommendation adopted, No. CV 6:14-02448, 2016 WL 266465 (W.D. La. Jan. 20, 2016). There, IBERIABANK filed suit against its former Senior Vice President and Chief Lending Officer alleging breach of fiduciary obligations and violations of LUTPA. *Id.* at *1, *2. The Court, noting "neither the Louisiana Supreme Court, nor any Louisiana court, has considered whether La. R.S. 51:1406 precludes a financial institution such as IberiaBank from filing a claim under LUTPA," examined the text of the statute and the Fifth Circuit's decision in *Truong v. Bank of America, N.A.* and held, "this Court predicts the Louisiana Supreme Court would conclude that LUTPA does not exclude 'federally insured financial institutions' from bringing a LUTPA claim." *Id.* at *3, *4; *Truong v. Bank of America, N.A.*, 717 F.3d 377, 385-386 (5th Cir. 2013). The key findings were

that "the Fifth Circuit focused on the fact that [Louisiana Revised Statutes 51:1406(1)'s] application was solely to exempt the designated entities from LUTPA liability," and that "[i]f the Legislature had intended to remove the right of 'federally insured financial institutions' to bring LUTPA claims, it would have amended [the statute] to clarify that such financial institutions are prohibited from bringing LUTPA actions." *Id.* at \*4.

With Defendants failing to identify any case supporting their position, the jurisprudence cited herein establishes that Revised Statute 51:1406 does not apply and that First Horizon can bring a LUTPA claim.

**D. Tennessee Law Applies to First Horizon's Claims for Inducement of Breach of Contract**

The Complaint alleges DMMS induced Hoefer to breach his contractual obligations to First Horizon in violation of Tennessee statutory and common law.[12] Tennessee law applies to those claims.

**1. Standards for Determining the Applicable Law**

First Horizon does not dispute that Louisiana rules on conflicts of law apply to the determination of whether Tennessee or Louisiana law applies to the claims for inducement of breach of contract. First Horizon, however, disagrees with DMMS's analysis, notably because it is incomplete, as DMMS focuses exclusively on contacts each state has to the dispute and fails to examine the policies of Tennessee and Louisiana.

Under Civil Code Article 3542, "courts apply the law of the state that would bear the most serious consequences legally, socially, and economically if not applied." *Acad. of Allergy & Asthma in Primary Care v. Louisiana Health Serv. & Indem. Co.*, 599 F. Supp. 3d 413, 419 (E.D.

---

[12] R. Doc. 1, ¶¶ 87-101.

La. 2022) (quoting *Marchesani v. Pellerin-Milnor Corp.*, 269 F.3d 481, 488 (5th Cir. 2001)). The court continued by setting forth the process as follows:

> The Court must first examine the pertinent contacts of each state to the parties and the events giving rise to the dispute. *See* La. Civ. Code art. 3542. These contacts include (1) the place of conduct and injury; (2) the domicile, habitual residence, or place of business of the parties; (3) and the state in which the relationship, *if any*, between the parties was centered. Next, the Court will identify the pertinent policies. Articles 3515 and 3542, taken together, enumerate six policies that must be considered in the choice of law analysis with respect to tort claims: (1) upholding the justified expectations of parties; (2) minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state; (3) deterring wrongful conduct; (4) repairing the consequences of injurious acts; (5) discouragement of forum shopping; and (6) interstate uniformity of result. Once the policies have been identified, the Court will evaluate the policies' strength and pertinence

*Id.* (internal citations omitted).

### 2. The Pertinent Contacts Do Not Favor Either Tennessee or Louisiana

In this case, Tennessee and Louisiana have an equal number of contacts. First Horizon and DMMS are domiciled in Tennessee and Louisiana, respectively. While the events giving rise to First Horizon's inducement claim occurred in Louisiana, Tennessee undisputedly is the place where the injury is felt by First Horizon. The Fifth Circuit in *Marchesani v. Pellerin-Milnor Corp.*, 269 F.3d 481, 487 (5th Cir. 2001), faced a similar circumstance with equal contacts between Tennessee and Louisiana law, and found that "the pertinent contacts in this case favor neither Louisiana nor Tennessee law."

### 3. Relevant State Policies

Articles 3515 and 3542, taken together, enumerate four policies that must be considered in the choice of law analysis for tort claims: (1) upholding the justified expectations of parties, (2) minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state, (3) deterring wrongful conduct, and (4) repairing the consequences of injurious

acts. *Marchesani,* 269 F.3d at 487. Other policies that might be considered include "(5) discouragement of forum shopping and (6) interstate uniformity of result." *Id.*

### 4. Strength and Pertinence Analysis

The "ultimate question is not which state has the most 'significant interes' in the dispute, but rather which state's *policies* would be *most seriously impaired* if its law were not applied to the issue, *i.e.,* the 'state which, in light of its relationship to the parties and the dispute and its policies rendered pertinent by that relationship, would bear the most serious legal, social, economic, and other consequences if its law were not applied.'" *Id.* at 488.

In *Marchesani*, when conducting the strength and pertinence analysis, the Fifth Circuit found four of the six foregoing policies [specifically the policies in the above Item Nos. (1), (2), (5) and (6)] "do not appear sufficiently implicated in this case to weigh very heavily in [its] analysis." *Id.* At issue in *Marchesani* was what state's law would apply to a products liability claim brough by the plaintiff, a Tennessee domiciliary, who was injured at her job in Tennessee by a pressured apparel dye machine that was manufactured by the defendant Louisiana corporation. *Id.* at 484. In finding the policies in Item Nos. (1), (2) and (4) to not be determinative, the Fifth Circuit considered the following: (i) Regarding the parties' expectations, a Tennessee citizen injured in Tennessee would only expect Tennessee law to apply, whereas a Louisiana manufacturer would expect to be subjected to Louisiana's product liability law; (ii) As to minimizing the adverse consequences, the court would not be "overly concerned" with consequences that might flow from subjecting he Louisiana manufacturer to the laws of more than one state because presumably it operated in multiple states; (iii) Discouragement of forum shopping was not implicated because the suit was brought in Louisiana where the defendant was domiciled and committed the acts giving rise to the product liability claim; (iv) Uniformity of interstate did not come into play

because at the time there was no uniform approach to product liability law throughout the states. *Id.* at 488–89 (5th Cir. 2001).

Similar to *Marchesani*, the policies in the above Item Nos. (1), (2), and (5) would not be implicated in or pertinent to this case. First Horizon being injured in Tennessee would expect Tennessee law to apply, while DMMS and Hoefer residing in Louisiana and engaging in its unlawful scheme in Louisiana would expect Louisiana law to apply. Then, although not expressly stated in the Complaint but referenced in First Horizon's Application for Preliminary Injunction, DMMS operates or plans to operate in multiple states, including Georgia.[13] Accordingly, like the defendant in *Marchesani,* the Court should not be concerned with subjecting DMMS to the laws of multiple states. As to forum shopping, First Horizon notes that in addition to filing suit against DMMS in its place of domicile, which is similar to the circumstance in *Marchesani*, First Horizon did so in order to not burden the federal court system with a second lawsuit in a Tennessee federal court to raise its inducement claim that arises out of the same transaction and occurrence as the LUTPA claim against DMMS.

The pertinent policies are those in Item Nos. (3), (4) and (6). Going out of order to first address Item No. (6) on uniformity of result, Louisiana is an outlier as it concerns tortious interference claims. As the Louisiana Supreme Court mentioned, tortious interference originates out of the common law, and the court did not "adopt whole and undigested the fully expanded common law doctrine of interference with contract." *9 to 5 Fashions, Inc. v. Spurney*, 538 So. 2d 228, 234 (La. 1989). In this case, because First Horizon asserts Tennessee's common law

---

[13] First Horizon directs the Court's attention to Exhibit A to the Application for Preliminary Injunction (R. Doc. 9-3), which is a document created by DMMS and titled" Confidential Private Placement Investor Presentation", wherein DMMS discusses its Georgia operations.

inducement claim and its statutory analogue against DMMS, this factor favors application of Tennessee law, so as to maintain interstate uniformity of result.

Regarding deterring wrongful conduct and repairing the consequences of injurious acts, the question to "answer is which state's policies of deterrence and compensation [with respect to the claim of inducement of breach of contract] would be *most seriously impaired* if its law were not applied in the instant case." *Marchesani*, 269 F.3d at 489. First Horizon and DMMS do not disagree that Tennessee and Louisiana have different scheme with respect to an inducement of breach of contract claim as alleged by First Horizon in this case, that Tennessee recognizes such claim while Louisiana does not. But the task is "not to determine which state has struck the better bargain, but rather to evaluate which state's general scheme would suffer more damage, *i.e.,* which would be more adversely affected, if its law were not applied." *Id.* The Fifth Circuit in *Marchesani* approach that analysis by way of the following rhetorical question:

> Would Tennessee's comprehensive scheme of product liability, which focuses on the date that the product is *first purchased for use,* be more seriously impaired if Tennessee's statute of repose were not applied to this case involving Tennessee residents, employers, and worker's compensation payments than would Louisiana's scheme, which focuses on the date of the victim's *injury,* thereby affording a Louisiana manufacturer an "escape hatch" that would not be available if the injury had occurred either in Louisiana or to an individual domiciled in Louisiana?

*Id.* The Fifth Circuit concluded that because Tennessee had the more comprehensive approach to product liability claims, its policies would be most seriously impaired, thereby resulting in Tennessee's product liability law being applied. *Id.*

Following the Fifth Circuit's cue, First Horizon presents the following rhetorical question for the Court's consideration: Would Tennessee's scheme of inducement of breach of contract, which focuses on awareness of and malicious intent to induce a breach, be more seriously impaired if it were not applied than would Louisiana's scheme for tortious interference, which focuses on a

corporate officers unjustifiably interfering with a contract, thereby affording an offender in Louisiana an "escape hatch" that would be not available if the injury had occurred in Louisiana?

As noted in the Complaint, an inducement claim requires defendant being aware of a contract between plaintiff and a third party and maliciously intend, *i.e.* willfully seek, to induce a breach of the contract. *Freeman Mgmt. Corp. v. Shurgard Storage Centers, LLC*, 461 F. Supp. 2d 629, 637 (M.D. Tenn. 2006). Tennessee has applied that scheme to numerous contracts and scenarios, including restrictive covenants. *See Interstate S. Packaging, LLC v. Korman*, No. 2:20-CV-207, 2021 WL 5161910, at *15 (E.D. Tenn. Sept. 5, 2021)(defendant induced employees to violate noncompetition agreements). With Louisiana's tortious interference being applicable to a very narrow set of circumstances, Tennessee's scheme is much more comprehensive, and so like in *Marchesani*, Tennessee law would be more seriously impaired if it is not applied to First Horizon's claim for inducement of breach of contract.

First Horizon concludes with a note that the discussion in Section III(C)(1) of this memorandum on LUPTA reveals that Tennessee and Louisiana are consistent with each other. As discussed above, DMMS participated in the unlawful scheme with Hoefer, as well as induced him to breach his employee non-solicitation covenant in bad faith, both of which make DMMS liable under LUTPA. Thus, while Tennessee law and Louisiana law utilize different legal theories and claim to impose liability, it is clear that both Tennessee and Louisiana law prohibit the same conduct. Thus, in addition to the foregoing, applying Tennessee law to the inducement claim would further both states' policies of deterring DMMS's wrongful conduct and repairing the consequences and injuries suffered by First Horizon.

Considering the foregoing, Louisiana's choice of law principles require Tennessee law govern First Horizon's claims of inducement of breach of contract against DMMS.

21

**E. Counts III and IV Sufficiently Allege Causes of Action for Inducement of Breach of Contract.**

DMMS has not challenged whether the Complaint states a claim for relief under Tennessee law for inducement of breach of contract, and accordingly, DMMS's motion to dismiss those claims must be denied. First Horizon further demonstrates that the allegations in the Complaint indeed state a claim for relief.

Tennessee law recognizes both a common law and a statutory cause of action for unlawful inducement of a breach of contract. *See Polk & Sullivan, Inc. v. United Cities Gas Co.*, 783 S.W.2d 538, 542 (Tenn. 1989). Pursuant to Tennessee statutory law, it is unlawful for any person, by inducement, persuasion, misrepresentation, or other means, to induce or procure the breach or violation, or the refusal or failure to perform, any lawful contract by any party to that contract. In cases where such a breach or violation of a contract is so procured, the person responsible is liable for treble damages for the losses resulting from or incidental to the breach of the contract. Tenn. Code Ann. § 47-50-10. The same seven elements of proof required for a common law claim of tortious interference with a contract are required for a claim under Tenn. Code Ann. § 47-50-10. *See Smith v. Harriman Util. Bd.*, 26 S.W.3d 879, 886 (Tenn. Ct. App. 2000).

To plead a tortious interference with contractual relations claim in Tennessee a plaintiff must allege (1) the existence of a legal contract between the plaintiff and a third party; (2) the defendant's awareness of the contract; (3) the defendant's malicious intent to induce breach of the contract; (4) a breach of contract proximately caused by defendant's actions; and (5) resulting damages to the plaintiff. *Freeman Mgmt. Corp. v. Shurgard Storage Centers, LLC*, 461 F. Supp. 2d 629, 637 (M.D. Tenn. 2006). "In the context of a claim for tortious interference with contract, 'malice' is defined simply as the willful violation of a known right." *Id.*

First Horizon's Complaint adequately pleads the required elements for a common law claim of tortious interference with a contract and a claim under Tennessee Code Annotated § 47-50-10.[14]

### F. Civil Conspiracy

In its Motion to Dismiss, Defendants contend that First Horizon's civil conspiracy claim fails because (1) it is based on a breach of contract, and Louisiana law does not recognize a claim for conspiracy to breach a contract; and (2) "to the extent" that First Horizon alleges that Hoefer and DMMS conspired to violate LUTPA, "the Complaint lacks substantive factual allegations of conduct sufficient to rise to the level of an unfair trade practice." Defs. Mot. At 19. For the reasons set forth below, Defendants' claims, once again, have no merit.

First Horizon does not base its civil conspiracy claim on a mere breach of contract. Rather, it bases its civil conspiracy claim on Defendants' violation of LUTPA, which is, undisputably, a claim based on tortious conduct, making a conspiracy to commit such conduct an actionable claim. *See Sedgwick Claims Mgmt. Servs., Inc. v. Dodd, et al.,* Civ. Action No. 24-2942, 2025 WL 2799032 (E.D. La. Oct. 1, 2025).

*Sedgewick* is on all fours with the case here. In *Sedgwick*, the plaintiff asserted claims for breach of contract, violation of LUTPA and conspiracy to violate LUTPA based on allegations that defendant Dodd resigned her employment with Sedgewick, went to competitor (and co-defendant) Halliwell, where she solicited at least ten of Sedgewick's employees to join Halliwell, despite the fact that Dodd was prohibited by non-solicitation and confidentiality contractual clauses from doing so. Dodd filed a 12(b)(6) motion to dismiss, claiming that "the LUTPA claim against her should be dismissed because LUTPA is not an alternative remedy for a simple breach

---

[14] R. Doc. 1, ¶¶ 87-101.

of contract claim." *Sedgwick, supra* at 7. In making that argument, she relied on *American Machinery Movers*, a case involving a former employee who set up a competing business and solicited plaintiff's customers, actions that, the court held, were not unlawful in the absence of restrictive covenants prohibiting such conduct. *Id*. at 8.

Rejecting Dodd's argument, the *Sedgwick* court held that "the instant matter is distinct from *American Machinery* in that there was no agreement restricting the employee from competition or solicitation." *Id.* (emphasis added). The fact that "there was a valid employment agreement restricting the use of Plaintiff's confidential information and the solicitation of Plaintiff's employees", and Plaintiff engaged in such conduct regardless, are "[t]he crucial elements that distinguish the breach of contract claim and the LUTPA claim." *Id.* Because plaintiff's allegations "plausibly assert[ed] a claim under LUTPA", the court found that plaintiff's "claims for civil conspiracy to violate LUTPA and injunctive relief also survive dismissal at the Rule 12(b)(6) state." *Id.* at 8, 10.

First Horizon's Complaint, as pled, is no different here. Facts showing that Hoefer and DMMS conspired to recruit First Horizon employees to join DMMS in violation of Hoefer's non-solicitation agreement, and even offered to indemnify those employees in the event they violated their own non-solicitation agreements, clearly support a LUTPA claim, which, as a matter of law, may serve as the basis for an actionable civil conspiracy claim. *See Sedgwick*, 2025 WL 2799032, at *11. ("Plaintiff has plausibly asserted a claim under LUTPA, civil conspiracy to violate LUTPA, and for injunctive relief"). Consequently, First Horizon's civil conspiracy claim against Hoefer and DMMS, based on the underlying LUPTA tort claim, survives dismissal on Defendants' 12(b)(6) motion, as the claim is actionable under Louisiana law. *See Sedgwick, supra; see also Prime Ins. Co. v. Imperial Fire & Cas. Ins. Co*., 151 So. 3d 670, 676-77 (La. App. 4 Cir. 2014),

writ denied, 157 So. 3d 1110 (La. 2015) (implicitly recognizing civil conspiracy claim based on violation of LUTPA; "Prime's cause of action for civil conspiracy pled in its petition clearly identifies . . . a violation of LUTPA as the underlying tort[] that form[s] the basis for the alleged conspiracy").

### G. Injunctive Relief

Contrary to Defendants' assertion, First Horizon has, as set forth above, stated "plausible substantive claims" upon which its request for injunctive relief is based.  As First Horizon plausibly pleads actionable claims against Defendants in the Complaint, First Horizon's request for injunctive relief for the underlying substantive claims is also plausibly plead. Accordingly, the Court should deny Defendants' Motion in its entirety.

## III.    CONCLUSION

First Horizon's Complaint plausibly pleads claims for breach of contract, bad faith breach of contract, violations of LUTPA, violations of Tennessee law, civil conspiracy to violate LUTPA, and injunctive relief. Accordingly, Defendants' Rule 12(b)(6) Motion to Dismiss should be denied.

Respectfully submitted,

*/s/ Andrew J. Halverson*
Andrew J. Halverson, LA Bar No. 31184
Michael C. Ledet, LA Bar No. 40430
**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
325 Settlers Trace Blvd., Suite 201
Lafayette, LA 70508
Telephone: (337) 769-6582
Facsimile: (337) 989-0441
Email: andrew.halverson@ogletreedeakins.com
michael.ledet@ogletreedeakins.com

***Attorneys for Plaintiff First Horizon Corporation***

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the above and foregoing document has this date been served to all known counsel of record in this proceeding by:

( )     Hand Delivery              ( )     Prepaid U.S. Mail

( )     Facsimile                  ( )     Federal Express

( )     E-Mail                     ( X )   CM/ECF System

Lafayette, Louisiana, this 19th day of March, 2026.

                              */s/ Andrew J. Halverson*
                              Andrew J. Halverson