| | | |
|---|---|---|
| FIRST HORIZON CORPORATION | * | CIVIL ACTION NO. 3:26-CV-182 |
| | * | |
| | * | |
| | * | JUDGE BRIAN A. JACKSON |
| VERSUS | * | |
| | * | |
| | * | MAGISTRATE JUDGE |
| KARL HOEFER, ET AL. | * | ERIN WILDER–DOOMES |
| * * * * * * * * * * * * * * * | | |

## OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

Thomas M. Flanagan, T.A. (#19569)
Anders F. Holmgren (#34597)
Alixe L. Duplechain (#39167)
Jordan B. Redmon (#37272)
FLANAGAN PARTNERS LLP
201 St. Charles Avenue, Suite 3300
New Orleans, Louisiana 70170
Telephone: (504) 569-0235
Facsimile: (504) 592-0251
tflanagan@flanaganpartners.com
aholmgren@flanaganpartners.com
aduplechain@flanaganpartners.com
jredmon@flanaganpartners.com

*Counsel for Karl Hoefer*

Kyle Schonekas, T.A. (#11817)
Joelle F. Evans (#23730)
Andrea V. Timpa (#29455)
Benjamin O. Flaxenburg (#37682)
SCHONEKAS EVANS MCGOEY &
MCEACHIN, LLC
909 Poydras Street, Suite 1600
New Orleans, Louisiana 70112
Telephone: (504) 680-6050
Facsimile: (504) 680-6051
kyle@semmlaw.com
joelle@semmlaw.com
andrea@semmlaw.com
benjamin@semmlaw.com

*Counsel for DMMS Holdings, LLC*

# TABLE OF CONTENTS[1]

I.   INTRODUCTION ...................................................................................................1

II.  BACKGROUND ....................................................................................................3

     A.   First Horizon awards Hoefer incentives through Grant Notices.............................3

     B.   Years later, Hoefer leaves First Horizon;
          citing benefit-forfeiture provisions of the Grant Notices,
          First Horizon in turn sues Hoefer and DMMS. ....................................... 4

     C.   After waiting nearly three weeks, First Horizon moves
          for a preliminary injunction based on benefit-forfeiture provisions.........................5

III. LAW & ARGUMENT ........................................................................................ 6

     A.   First Horizon is likely to lose on the merits. .......................................... 6

          1.   First Horizon's claims turn on the nature of the Grant Notices.................7

          2.   The Grant Notices contain mere benefit-forfeiture
               provisions; those provisions do not create
               a non-solicitation obligation. ......................................................7

               a.   The Grant Notices should be treated the same as
                    other benefit-forfeiture provisions construed
                    under other states' laws. ................................................. 8

               b.   Under Tennessee law, the Grant Notices do not
                    create any independently enforceable
                    non-solicitation obligation..........................................................10

               c.   Under Louisiana law, the Grant Notices do not
                    create any independently enforceable
                    non-solicitation obligation..........................................................14

---

[1]   Under Local Civil Rule 7(g), this table of contents and the table of authorities that follows are "excluded from" the 25-page limit for memoranda. Excluding tables, this memorandum is 21 pages.

3. First Horizon's anticipated counterarguments fail......................................16

B. Given that the Grant Notices feature mere benefit-forfeiture provisions, First Horizon cannot establish the remaining prerequisites for injunctive relief. .........................................................19

    1. Because the Grant Notices provide a built-in remedy for solicitation, First Horizon cannot establish irreparable harm as a matter of law. ...........................................20

    2. Granting an injunction would unjustifiably restrain Defendants; denying one would hold First Horizon to the terms of its own Grant Notices ......................................20

    3. Interpreting the Grant Notices as written is in the public interest; rewriting them to impose new obligations is not........................................20

IV. CONCLUSION ...........................................................................................21

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*AbbVie, Inc. v. Fitch,*
    152 F.4th 635 (5th Cir. 2025) .................................................................1, 6, 19–21

*Anibowei v. Morgan,*
    70 F.4th 898 (5th Cir. 2023) ............................................................................. 20

*CapWealth Advisors, LLC v. Twin City Fire Ins. Co.,*
    665 F. Supp. 3d 862 (M.D. Tenn. 2023)......................................................11–12

*Cantor Fitzgerald, L.P. v. Ainslie,*
    312 A.3d 674 (Del. 2024) ..............................................................................8–9

*City of New Orleans v. Tex. & P. Ry. Co.,*
    171 U.S. 312 (1898)...........................................................................................15

*Covington v. Robinson,*
    723 S.W.2d 643 (Tenn. Ct. App. 1986)............................................................. 11

*Fraser v. Nationwide Mut. Ins. Co.,*
    334 F. Supp. 2d 755 (E.D. Pa. 2004) ..................................................................8

*Gen. Am. Life Ins. Co. v. Armstrong,*
    185 S.W.2d 505 (Tenn. 1945)........................................................................... 11

*Hardin v. Hous. Chron. Pub. Co.,*
    572 F.2d 1106 (5th Cir. 1978) (per curiam) ................................................ 1, 6, 21

*Harvey v. Turner,*
    No. M-2014-368-COA-R3-CV, 2015 WL 1451702 (Tenn. Ct. App. Mar. 26, 2015)...............12

*Health & Wellness Lifestyle Clubs, LLC v. Raintree Golf, LLC,*
    808 F. App'x 338 (6th Cir. 2020) .....................................................................10

*Hoffman v. Westcott,*
    131 F.4th 332 (5th Cir. 2025) ............................................................................7

*James Bourgeois Contractor, Inc. v. Anderson,*
    No. 25-CV-472, 2025 WL 2400498 (M.D. La. Aug. 19, 2025) (Jackson, J.)........................1, 6

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
  313 U.S. 487 (1941) ........................................................................................10

*LKQ Corp. v. Rutledge* ("*LKQ I*"),
  96 F.4th 977 (7th Cir. 2024)....................................................................8, 18

*LKQ Corp. v. Rutledge* ("*LKQ II*"),
  337 A.3d 1215 (Del. 2024) ..............................................................................8

*LKQ Corp. v. Rutledge* ("*LKQ III*"),
  126 F.4th 1247 (7th Cir. 2025) ....................................................................8–9

*Molycorp Minerals, LLC v. Mingus Constructors, Inc.*,
  No. 13-CV-2141, 2013 WL 6661636 (D. Colo. Dec. 17, 2013)......................21

*NCC Fin., LLC v. Investar Bank, N.A.*,
  No. 20-CV-137, 2021 WL 1206803 (M.D. La. Mar. 30, 2021) (Jackson, J.)............14

*River House Partners, LLC v. Grandbridge Real Estate Cap., LLC*,
  No. 15-CV-58, 2015 WL 6142874 (M.D. La. Oct. 19, 2015) (Jackson, J.) ................7

*Tenn. Div. of United Daughters of the Confederacy v. Vanderbilt Univ.*,
  174 S.W.3d 98 (Tenn. Ct. App. 2005). ........................................................12

*Turner v. Purina Mills, Inc.*,
  989 F.2d 1419 (5th Cir. 1993) ........................................................................7

*TWB Architects, Inc. v. Braxton, LLC*,
  578 S.W.3d 879 (Tenn. 2019) ......................................................................12

*United States v. Abbott*,
  110 F.4th 700 (5th Cir. 2024) (en banc)........................................................6

*U.S. All. Grp., Inc. v. Cardtronics, Inc.*,
  No. 21-CV-1074, 2022 WL 266995 (E.D. La. Jan. 28, 2022) (Vance, J.) ................11

*Zemurray v. Boe*,
  105 So. 2d 243 (La. 1958) ............................................................................15

## Louisiana Statutes & Civil Code Articles

La. Civ. Code art. 1756 ....................................................................................18

La. Civ. Code art. 1767 ..............................................................................14–15

La. Civ. Code art. 1987 ................................................................................. 18

La. Civ. Code art. 1994 ................................................................................. 17

La. Civ. Code art. 1995 ................................................................................. 17

La. Civ. Code art. 1996 ................................................................................. 17

La. Civ. Code art. 1997 ................................................................................. 17

La. Civ. Code art. 2045 ................................................................................. 14

La. Civ. Code art. 2046 ................................................................................. 14

La. Civ. Code art. 3540 ................................................................................. 10

La. R.S. 23:921 ............................................................................................. 18

**Federal Statutes**

28 U.S.C. § 1292 ............................................................................................6

**Treatises & Restatements**

RESTATEMENT (SECOND) OF CONTRACTS § 224 ............................................. 11

RESTATEMENT (SECOND) OF CONTRACTS § 225 ............................................. 11

Richard A. Lord, 13 WILLISTON ON CONTRACTS § 38:1 (4th ed.) ....................... 12

Saul Litvinoff & Ronald J. Scalise Jr., *Meaning of Condition*, *in* 5 LA. CIVIL
    LAW TREATISE, LAW OF OBLIGATIONS § 5.3 (2d ed.) (Nov. 2025 update) .................. 14

Steven W. Feldman, *Conditions Defined*, *in* 22 TENN. PRACTICE SERIES
    CONTRACT LAW & PRACTICE § 9:1 (Oct. 2025 update). ........................................ 12–13

Steven W. Feldman, *Promises Distinguished*, *in* 22 TENN. PRACTICE SERIES
    CONTRACT LAW & PRACTICE § 9:3 (Oct. 2025 update). .................................... 11

Steven W. Feldman, *Types of Conditions—Conditions Subsequent*,
    *in* 22 TENN. PRACTICE SERIES CONTRACT LAW
    & PRACTICE § 9:12 (Oct. 2025 update). ........................................................... 12

## OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

The defendants, Karl Hoefer and DMMS Holdings, LLC, urge the Court to deny the motion of the plaintiff, First Horizon Corporation, for a preliminary injunction. The plain text of First Horizon's incentive awards to Hoefer confirms that Hoefer did not undertake any standalone obligation not to solicit First Horizon employees. Based on the text of the incentive awards alone, First Horizon has failed to carry its "heavy burden"[2] to "unequivocally show the need"[3] for the "extraordinary and drastic remedy"[4] of a preliminary injunction.

## I.   INTRODUCTION

This case hinges on the plain terms of incentives a bank awarded a former employee. The incentives are unilateral grants with strings attached. The way they work is simple. In each one, the bank granted the former employee an economic incentive. And the former employee, in turn, acknowledged he would forfeit that incentive (or have to pay it back) if he solicited the bank's employees during a set period.

But the bank now wants to rewrite those incentives. Trying to transform incentive-forfeiture provisions into non-solicitation agreements, the bank (First Horizon) sued the former employee (Karl Hoefer) and a potential competitor (DMMS). First Horizon's suit rests on the core assumption that the incentives—called "Grant Notices"—create unconditional non-solicitation obligations. And it is on that same assumption that First Horizon asks for a preliminary injunction.

---

[2]   *Hardin v. Hous. Chron. Pub. Co.*, 572 F.2d 1106, 1107 (5th Cir. 1978) (per curiam).

[3]   *James Bourgeois Contractor, Inc. v. Anderson*, No. 25-CV-472, 2025 WL 2400498, at *7 (M.D. La. Aug. 19, 2025) (Jackson, J.) (quotation omitted).

[4]   *AbbVie, Inc. v. Fitch*, 152 F.4th 635, 642 (5th Cir. 2025) (quotation omitted).

That core assumption is wrong. Based on the text of the Grant Notices alone, First Horizon cannot establish the four prerequisites for a preliminary injunction. No facts are needed. One legal question, to be answered from within the four corners of the Grant Notices, is dispositive: Do these instruments create an independent non-solicitation obligation?

They do not. Each Grant Notice awards Hoefer a benefit (the incentive) subject to a condition (non-solicitation). Hoefer can refrain from soliciting and keep the incentive. Or he can solicit and forfeit the incentive (or repay it). Hoefer has no independent obligation not to solicit.

The text of each Grant Notice confirms that conclusion. Each one begins by acknowledging the award that First Horizon is granting Hoefer: "You have been granted a [type of incentive award] by First Horizon Corporation."[5] And each Grant Notice goes on to explain that "this award will be forfeited, or if already vested [Hoefer] must pay in cash to [First Horizon] the gross pre-tax value…*if*…." Hoefer solicits First Horizon employees within two years after the award vests.[6]

The text of the Grant Notices thus calls for denial of First Horizon's motion. Because Hoefer has no independent obligation not to solicit, First Horizon is likely to lose on the merits. And because the Grant Notices feature a built-in remedy for solicitation (forfeiture or claw-back of the incentive awards), First Horizon cannot show irreparable harm. The Grant Notices do not create a non-solicitation obligation enforceable by an injunction, so denying the motion would give First Horizon everything it could have expected—causing it no harm. And interpreting the Grant Notices as written is in the public interest; rewriting them to impose new obligations is not.

---

[5]     *See* Doc. 1-1, Grant Notice, Long-Term Incentive Units, p. 1; Doc. 1-2, Grant Notice, Restricted Stock Units, p. 1; Doc. 1-3, Grant Notice, Long-Term Incentive Units, p. 1; Doc. 1-4, Grant Notice, Restricted Stock Units, p. 1; and Doc. 1-5, Grant Notice, Restricted Cash Units, p. 1.

[6]     *E.g.*, Exhibit A, Grant Notices, p. 1. For the Court's convenience, the Grant Notices that are already in the record have been combined and attached to this brief, with only the exhibit stamps changed.

Because the Grant Notices contain mere benefit-forfeiture provisions—and impose no non-solicitation obligations—First Horizon cannot carry its burden. Its motion should be denied.

## II.  BACKGROUND

First Horizon's motion turns on whether the Grant Notices create an unconditional non-solicitation obligation. Because that question is a legal one, this background draws from the Grant Notices and assumes the truth of the complaint's well-pleaded, non-conclusory allegations.

### A.  First Horizon awards Hoefer incentives through Grant Notices.

Karl Hoefer worked for First Horizon.[7] During his tenure, First Horizon awarded him some incentives.[8] First Horizon did so through documents it called "Grant Notices."[9]

Some of the incentives awarded to Hoefer under the Grant Notices use different labels. Some are "long-term incentive units"; others are "management restricted stock units"; and still others are "restricted cash units." But each Grant Notice does the same basic thing: First Horizon conditionally awards Hoefer a benefit (the incentive) with strings attached (non-solicitation).

The relevant language of the Grant Notices is the same. Three features merit mention.

*First*, each Grant Notice begins by describing the incentive First Horizon is awarding Hoefer: "You have been granted a [type of incentive award] by First Horizon Corporation."[10]

---

[7]  Doc. 1, complaint, ¶¶ 14 and 18.

[8]  *E.g.*, Exhibit A, Grant Notices.

[9]  *See generally id.*

[10]  *Id.*, p. 1.

*Second*, each Grant Notice states that the incentive First Horizon has awarded Hoefer "will be forfeited," or must be paid back to First Horizon, under certain circumstances:

> **Also, this award will be forfeited, or if already vested you must pay in cash to [First Horizon] the gross pre-tax value of this award measured at vesting, if during the restriction period applicable to this award:** (1) you are terminated for Cause as defined in the Governing Plan; or **(2) you, either on your own behalf or on behalf of any other person or entity, in any manner directly or indirectly solicit, hire, or encourage any person who is then an employee** or customer **of [First Horizon] or any and all of its subsidiaries or affiliates to leave the employment of**, or to end, diminish, or move any of his, her, or its accounts or relationships with, **[First Horizon] or any and all of its subsidiaries or affiliates.**[11]

Hoefer was not terminated for cause. So the only circumstance relevant here is (2), addressing solicitation of First Horizon employees (customers are not at issue now). The upshot is that Hoefer acknowledged in each Grant Notice that he would forfeit the award, or would have to repay it to First Horizon, if he solicited First Horizon employees within two years after the award vested.

*Third and finally*, each Grant Notice states that "[t]his award is governed by the substantive laws of Tennessee, without regard to conflicts of laws principles."[12]

### B. Years later, Hoefer leaves First Horizon; citing benefit-forfeiture provisions of the Grant Notices, First Horizon in turn sues Hoefer and DMMS.

Years after First Horizon awarded Hoefer the incentives through the Grant Notices, Hoefer left First Horizon and began working with DMMS.[13] DMMS is a holding company formed to acquire a regional bank; First Horizon fears that bank will compete with it.[14]

---

[11]    Exhibit A, Grant Notices, p. 1 (emphasis added).

[12]    *Id.*

[13]    Doc. 1, complaint, ¶ 18.

[14]    *Id.*, ¶ 15.

Reimagining benefit-forfeiture provisions of the Grant Notices as non-solicitation agreements, First Horizon sued Hoefer and DMMS in this Court. In its complaint and now, its motion for a preliminary injunction, First Horizon assumes that the Grant Notices impose unconditional non-solicitation obligations on Hoefer. In other words, it assumes that Hoefer has no say in the matter and may be enjoined from soliciting his former colleagues *apart from* the risk of forfeiting any incentives. And on that assumption, First Horizon claims that (1) Hoefer has breached the Grant Notices by soliciting First Horizon employees, and (2) DMMS has helped him do so.[15]

### C. After waiting nearly three weeks, First Horizon moves for a preliminary injunction based on the benefit-forfeiture provisions of the Grant Notices.

Weeks after suing over benefit-forfeiture provisions of the Grant Notices, First Horizon moved for a preliminary injunction.[16] It wants to preliminarily enjoin Hoefer from soliciting First Horizon employees and DMMS from acting in concert with Hoefer to solicit such employees.[17]

But the motion asks for a remedy—injunctive relief—that differs from the remedy First Horizon chose when it wrote and issued the Grant Notices to Hoefer. Under First Horizon's own Grant Notices, if Hoefer solicits First Horizon employees during the applicable restriction periods, then the remedy is built in: The incentive "award will be forfeited, or if already vested [Hoefer] must pay in cash to [First Horizon] the gross pre-tax value of the award…."[18]

The Court set an April 13 hearing on First Horizon's motion.[19]

---

[15]    *Id.*, ¶¶ 65–105.

[16]    Doc. 9, application for preliminary injunction.

[17]    Doc. 9-2, proposed preliminary injunction.

[18]    *E.g.*, Exhibit A, Grant Notices, p. 1.

[19]    Doc. 11, order setting preliminary injunction hearing.

## III.  LAW & ARGUMENT

First Horizon moves the Court for the "extraordinary and drastic remedy" of a preliminary injunction.[20] But to get that rare remedy, First Horizon must "unequivocally show the need for its issuance"[21] by "clearly carr[ying] the burden of persuasion" on all four elements: "(1) a likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest."[22]

The outcome on those elements turns on a question of law: Do the benefit-forfeiture provisions of the Grant Notices create a non-solicitation obligation? Because the answer is "no," First Horizon cannot carry its "heavy burden."[23] Its motion should be denied.[24]

### A.  First Horizon is likely to lose on the merits.

The success-on-the-merits element "is the most important."[25] After all, "[a] district court that grants a preliminary injunction restricts a party's conduct before its rights are fully litigated—

---

[20]  *AbbVie, Inc*, 152 F.4th at 642 (quotation omitted).

[21]  *James Bourgeois Contractor, Inc.*, 2025 WL 2400498, at *7 (Jackson, J.) (quotation omitted).

[22]  *AbbVie, Inc.*, 152 F.4th at 642 (quotation omitted).

[23]  *Hardin*, 572 F.2d at 1107.

[24]  Because that legal question is dispositive, no evidence or discovery is needed. As Magistrate Judge Wilder-Doomes reported, if the Court rules against Defendants on the dispositive legal question, then Defendants would stipulate to entry of a preliminary injunction, reserving appellate rights on the legal question. Doc. 20, telephone conference report, p. 1. The stipulation would track First Horizon's proposed preliminary injunction order, Doc. 9-2, and would reserve Defendants' right to appeal under 28 U.S.C. § 1292(a)(1) the Court's resolution of the legal question that would underlie the preliminary injunction. *But see* Doc. 20, telephone conference report, p. 2 n.5 (incorrectly reporting that the stipulation would be tied to the complaint, which seeks broader relief, rather than the proposed preliminary injunction, which tracks Rule 65(d)(2)(C)); *cf.* Local Civil Rule 65 (an application for a preliminary injunction must be presented for the Court's consideration in a document separate from the complaint).

[25]  *United States v. Abbott*, 110 F.4th 700, 706 (5th Cir. 2024) (en banc) (quotation omitted).

at the risk that the party's conduct was actually lawful."[26] Here, First Horizon's failure to show likely success on the merits "is sufficient to make the…grant of a preliminary injunction improvident as a matter of law, such that [the Court] need not address the three remaining prongs…."[27]

First Horizon is likely to lose on the merits no matter the legal theory. As a matter of law, the benefit-forfeiture provisions in the Grant Notices do not create a non-solicitation obligation.

### 1. First Horizon's claims turn on the nature of the Grant Notices.

First Horizon's claims turn on the nature of the Grant Notices. First Horizon must show that the benefit-forfeiture provisions create unconditional non-solicitation obligations. The reason is simple: If the Grant Notices do not create unconditional non-solicitation obligations, then Hoefer's alleged solicitation cannot be a breach of that obligation or a LUTPA violation.[28]

### 2. The Grant Notices contain mere benefit-forfeiture provisions; those provisions do not create a non-solicitation obligation.

The text of the Grant Notices confirms that they do not create any non-solicitation obligation. The Grant Notices simply impose an economic consequence for any such solicitation.

The Grant Notices merely award Hoefer a contingent benefit (the incentive) with strings attached (non-solicitation). Hoefer may refrain from soliciting during the restriction period and keep the incentive award. Or Hoefer may solicit during that period and forfeit the incentive award. He is under no independent obligation not to solicit. That is true applying the laws of Tennessee

---

[26]     *Id.* (citation omitted).

[27]     *Hoffman v. Westcott*, 131 F.4th 332, 335 (5th Cir. 2025) (quotation omitted).

[28]     *See generally River House Partners, LLC v. Grandbridge Real Estate Cap., LLC*, No. 15-CV-58, 2015 WL 6142874, at *4 (M.D. La. Oct. 19, 2015) (Jackson, J.) (bad-faith breach of contract requires "a malicious failure to perform" a contractual obligation); *Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir. 1993) (emphasizing the narrow "range of prohibited practices" under LUTPA).

or Louisiana. Still, because benefit-forfeiture provisions like the Grant Notices are common in Delaware,[29] the leading state for business,[30] and in other states, Defendants start there.

> ### a. The Grant Notices should be treated the same as other benefit-forfeiture provisions construed under other states' laws.

Benefit-forfeiture provisions are not new. Courts across the country have construed them and concluded that they differ from restrictive covenants and do not support injunctive relief.[31]

A "hallmark of forfeiture provisions" like the Grant Notices that First Horizon awarded Hoefer "is that they are not enforceable through injunctive relief."[32] That is because benefit-forfeiture provisions like the Grant Notices merely create "contractual conditions requiring former employees to forfeit certain monetary benefits upon leaving the company" and competing.[33]

In that sense, a benefit-forfeiture provision "operates differently than a traditional restrictive covenant."[34] "The latter prohibits an employee from competing with their former employer" and allows an employer to "seek injunctive relief to enforce the employment restriction" if the

---

[29]   *See generally LKQ Corp. v. Rutledge* ("*LKQ I*"), 96 F.4th 977, 980 (7th Cir. 2024) (opinion certifying question to Delaware Supreme Court) (interpreting a benefit-forfeiture provision and noting the "common use of restrictive stock unit agreements governed by Delaware law").

[30]   *See* Charuni Patibanda-Sanchez, *Delaware Division of Corporations: 2024 Annual Report*, available at https://corpfiles.delaware.gov/Annual-Reports/Division-of-Corporations-2024-Annual-Report.pdf (noting that 66.7% of Fortune 500 companies are incorporated in Delaware).

[31]   *See, e.g.*, *Fraser v. Nationwide Mut. Ins.* Co., 334 F. Supp. 2d 755, 761 (E.D. Pa. 2004) (Pennsylvania law; describing benefit-forfeiture provision as not "carr[ying] the threat of injunction"); *Cantor Fitzgerald, L.P. v. Ainslie*, 312 A.3d 674, 691 (Del. 2024) (Delaware law; noting that benefit-forfeiture provisions do not support injunctive relief); *LKQ I*, 96 F.4th at 986 (Delaware law; stating essentially the same proposition); *LKQ Corp. v. Rutledge* ("*LKQ II*"), 337 A.3d 1215, 1222 (Del. 2024) (answering certified question) (Delaware law; observing that "unlike restrictive covenants," forfeiture provisions "are not enforceable through injunctive relief") (quotation omitted).

[32]   *LKQ I*, 96 F.4th at 986; *accord Cantor Fitzgerald*, 312 A.3d at 691 (benefit-forfeiture provisions are "unlike restrictive covenants" in that they "are not enforceable through injunctive relief").

[33]   *LKQ Corp. v. Rutledge* ("*LKQ III*"), 126 F.4th 1247, 1248 (7th Cir. 2025).

[34]   *LKQ I*, 96 F.4th at 983.

employee has breached the covenant.[35] Not so with a benefit-forfeiture provision. "Instead of prohibiting the competition outright, a forfeiture provision, as its name implies, works to forfeit or claw back a contingent benefit, thereby imposing a financial burden on the former employee."[36]

These benefit-forfeiture basics hold true no matter whether the former employee has already received the contingent benefit that is subject to the forfeiture provision.[37] In that scenario, the forfeiture provision creates a *condition subsequent* terminating the former employer's obligation to award the contingent benefit and triggering the former employee's obligation to return that benefit.[38] Conversely, when the contingent benefit has not been received, the forfeiture provision creates a *condition precedent* excusing the former employer's obligation to award that benefit.[39]

Here, the Grant Notices are subject to these benefit-forfeiture basics. Like the benefit-forfeiture provisions considered by courts across the country, the Grant Notices award a contingent benefit (the incentive) to Hoefer and condition that benefit on a performance by Hoefer (non-solicitation). Indeed, each Grant Notice provides that Hoefer will (1) forfeit any unvested incentive award, and (2) repay to First Horizon any vested incentive award, if Hoefer solicits First Horizon

---

[35] *Id.*

[36] *Id.* (citation omitted).

[37] *Compare Cantor Fitzgerald*, 312 A.3d at 677–93 (applying benefit-forfeiture principles in the context of a former employer's right to withhold financial benefits that former employees had not yet received) *with LKQ III*, 126 F.4th at 1249–50 (applying benefit-forfeiture principles in the context of a former employer's right to claw back financial benefits the former employee had already received).

[38] *See generally LKQ III*, 126 F.4th at 1250 (enforcement of a forfeiture provision allowed a former employer to claw back contingent benefit former employee had received).

[39] *See generally Cantor Fitzgerald*, 312 A.3d at 687 (forfeiture provision created a condition precedent excusing former employer's obligation to award former employees a contingent benefit).

employees during the restriction period.[40] It follows that non-solicitation is merely a condition on First Horizon's obligation to award Hoefer the incentive (or to let him keep the incentive).

If First Horizon believes Hoefer has engaged in prohibited solicitation, then First Horizon may demand that Hoefer return the award. And if amicable demand fails, First Horizon may seek to sue Hoefer on the theory that it is entitled to claw-back incentives it awarded Hoefer. But under no circumstances can First Horizon obtain an injunction prohibiting solicitation, because that hoped-for remedy rests on the assumption that the Grant Notices create independent non-solicitation obligations. That is not the way First Horizon drafted its instruments.[41]

### b. Under Tennessee law, the Grant Notices do not create any independently enforceable non-solicitation obligation.

Under Tennessee law, the Grant Notices contain benefit-forfeiture provisions that do not create any independently enforceable non-solicitation obligation that can support injunctive relief.

Each Grant Notice has a Tennessee choice-of-law provision.[42] Because jurisdiction is based on diversity, the Court applies the choice-of-law rules of the forum state.[43] Under Louisiana law, contractual choice-of-law provisions in the Grant Notices are presumed valid, unless the chosen law of Tennessee "contravenes the public policy" of the state whose law would otherwise apply.[44]

---

[40]     *See* Exhibit A, Grant Notices, p. 1.

[41]     *Cf. Health & Wellness Lifestyle Clubs, LLC v. Raintree Golf, LLC,* 808 F. App'x 338, 343 (6th Cir. 2020) (noting the "fatal flaw" in a breach-of-contract claim was that plaintiff "never bargained for a stand-alone promise"; it bargained only for a promise "as a condition of its own performance").

[42]     *See* Exhibit A, Grant Notices, p. 1.

[43]     *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 497–98 (1941).

[44]     *See* La. Civ. Code art. 3540.

Assuming (without admitting) that the contractual choice-of-law provisions are valid, Defendants analyze the Grant Notices under Tennessee law before turning to Louisiana law.[45] In the end, the result is the same under the laws of both states: The Grant Notices do not create any independent non-solicitation obligations.

Under Tennessee law, the "cardinal rule" of interpretation is "to ascertain the intention of the parties and to give effect to that intention, consistent with legal principles."[46] If the language of the instrument "is clear and unambiguous," as the language of the Grant Notices is, the Court "will determine the parties' intent from the four corners of the [Grant Notices] by interpreting the [Grant Notices] according to [their] plain terms as written and giving reasonable meaning to all the provisions of the [Grant Notices], without rendering portions … neutralized or without effect."[47]

Like the common law generally, Tennessee law distinguishes between promises (or undertakings) and conditions.[48] "A condition is an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due."[49] "Non-occurrence of a condition is not a breach by a party unless he is under a duty that the condition occur."[50]

---

[45] This is not to say that Tennessee law would govern all of First Horizon's claims. Given the narrow scope of the contractual choice-of-law provisions in the Grant Notices, a different choice-of-law analysis would necessarily control First Horizon's non-contract claims. *See U.S. All. Grp., Inc. v. Cardtronics, Inc.*, No. 21-CV-1074, 2022 WL 266995, at *1 (E.D. La. Jan. 28, 2022) (Vance, J.) ("Under Louisiana law, choice-of-law provisions that refer narrowly to the contract govern only matters of contract interpretation and enforcement, and do not extend to tort claims.").

[46] *CapWealth Advisors, LLC v. Twin City Fire Ins. Co.*, 665 F. Supp. 3d 862, 871 (M.D. Tenn. 2023) (quotation omitted), *aff'd*, No. 23-5359, 2024 WL 1134647 (6th Cir. Mar. 15, 2024).

[47] *Id.* (quotation omitted).

[48] *See Gen. Am. Life Ins. Co. v. Armstrong*, 185 S.W.2d 505, 507 (Tenn. 1945).

[49] Restatement (Second) of Contracts § 224; *see Covington v. Robinson*, 723 S.W.2d 643, 645 (Tenn. Ct. App. 1986) (relying on Restatement (Second) of Contracts § 224).

[50] Restatement (Second) of Contracts § 225(3); *accord* Steven W. Feldman, *Promises Distinguished, in* 22 Tenn. Practice Series Contract Law & Practice § 9:3 (Oct. 2025 update) [hereinafter *Feldman*, Contract Law & Practice]. The Tennessee Supreme

"A condition creates no rights or duties by itself, but limits or modifies rights or duties."[51] Generally, parties may "impose whatever conditions they wish," and "if such conditions are not literally met or exactly fulfilled, no liability can arise on the promise qualified by the conditions."[52]

Conditions can come in two forms—precedent and subsequent. "A condition precedent in a contract…must be performed or happen before a duty of immediate performance arises on the promise which the condition qualifies."[53] A condition subsequent, by contrast, "defeat[s] and annul[s] the contract upon the failure of either party to comply with the condition."[54]

Applying Tennessee law, the Court should hold that the Grant Notices create conditions on Hoefer's right to receive (or retain) the incentives that First Horizon awarded him. The Grant Notices do not create any non-solicitation obligation. Three steps confirm that conclusion.

***Step One.*** Under each Grant Notice, First Horizon awarded Hoefer a contingent benefit in the form of an incentive award. That is clear from the "plain terms"[55] each Grant Notice uses in the first paragraph: "You [*i.e.*, Hoefer] have been granted a [type of incentive award] by First Horizon Corporation."[56]

---

Court relies on Feldman's authoritative treatise. *E.g., TWB Architects, Inc. v. Braxton, LLC*, 578 S.W.3d 879, 891 (Tenn. 2019) (relying on *Feldman*, CONTRACT LAW & PRACTICE).

[51]    Feldman, *Conditions Defined*, *in* CONTRACT LAW & PRACTICE § 9:1; *accord* 13 WILLISTON ON CONTRACTS § 38:1 (4th ed.).

[52]    *Tenn. Div. of United Daughters of the Confederacy v. Vanderbilt Univ.*, 174 S.W.3d 98, 115 (Tenn. Ct. App. 2005).

[53]    *Harvey v. Turner*, No. M-2014-368-COA-R3-CV, 2015 WL 1451702, at *5 (Tenn. Ct. App. Mar. 26, 2015) (quotation omitted) (ellipsis in original).

[54]    Feldman, *Types of Conditions—Conditions Subsequent*, *in* CONTRACT LAW & PRACTICE § 9:12.

[55]    *CapWealth Advisors, LLC*, 665 F. Supp. 3d at 871 (quotation omitted).

[56]    *See* Exhibit A, Grant Notices, p. 1.

***Step Two.*** Under each Grant Notice, non-solicitation is a mere condition that influences whether First Horizon must deliver the incentive award. We know that because each Grant Notice uses this unambiguous, condition-creating language: "this award will be forfeited, or if already vested [Hoefer] must pay in cash to [First Horizon] the gross pre-tax value…*if*…." Hoefer engages in prohibited solicitation during the restriction period.[57]

Consider both sides of the arrangement. On Hoefer's side, Hoefer's right to receive (or to keep) the incentive award, and First Horizon's obligation to give him the award (or to let him keep it), is subject to an express condition: non-solicitation. And on First Horizon's side, First Horizon's right to withhold (or to claw back) the incentive award is subject to the same express condition of non-solicitation. Either way, non-solicitation is just a condition—not a standalone promise.

***Step Three.*** Because non-solicitation is a mere condition, it "creates no rights or duties by itself"[58] under Tennessee law. Instead, the condition of non-solicitation merely "limits or modifies" the parties' rights with respect to the incentives the Grant Notices awarded Hoefer.[59]

To sum up: The Grant Notices do not impose on Hoefer any independently enforceable non-solicitation obligation under Tennessee law. The Grant Notices create only conditions on the rights of the parties with respect to the incentives that First Horizon awarded Hoefer. Without an independently enforceable non-solicitation obligation, First Horizon's claims fail as a matter of law, and First Horizon cannot succeed on the merits.

---

[57]     *Id.*, p. 1 (emphasis added).

[58]     Feldman, *Conditions Defined*, *in* CONTRACT LAW & PRACTICE § 9:1.

[59]     *Id.*

### c. Under Louisiana law, the Grant Notices do not create any independently enforceable non-solicitation obligation.

The result is the same under Louisiana law: The Grant Notices contain mere benefit-forfeiture provisions. Those provisions impose conditions on the obligations of First Horizon relating to the incentives that First Horizon agreed to award Hoefer under the Grant Notices. They do not impose on Hoefer any non-solicitation obligation that can support a request for injunctive relief.

This Court knows well Louisiana's interpretive rules, so Defendants will not belabor them here. In short, "[u]nder Louisiana law, the '[i]nterpretation of a contract is the determination of the common intent of the parties.'"[60] "If the terms of a contract are unambiguous—*i.e.*, 'clear and explicit and lead to no absurd consequences'—then 'no further interpretation may be made in search of the parties' intent.'"[61] Here, no one disputes that the Grant Notices are "clear" and unambiguous, and no one contends that interpreting them as written would "lead to any absurd results."[62] So the Court's "inquiry stops" with the plain text of the Grant Notices.[63]

"A conditional obligation is one dependent on an uncertain event."[64] A condition "is an uncertain event on which the enforceability of an obligation is made to depend."[65] Louisiana recognizes two types of conditions: suspensive and resolutory. They are analogues to the common law

---

[60]   *NCC Fin., LLC v. Investar Bank, N.A.*, No. 20-CV-137, 2021 WL 1206803, at *3 (M.D. La. Mar. 30, 2021) (Jackson, J.) (quoting La. Civ. Code art. 2045).

[61]   *Id.* (quoting La. Civ. Code art. 2046).

[62]   *Id. (*quotation omitted).

[63]   *Id.* (quotation omitted).

[64]   La. Civ. Code art. 1767.

[65]   Saul Litvinoff & Ronald J. Scalise Jr., *Meaning of Condition*, *in* 5 La. Civil Law Treatise, Law of Obligations § 5.3 (2d ed.) (Nov. 2025 update).

conditions precedent and subsequent.[66] A condition is *suspensive* if the obligation "may not be enforced until the uncertain event occurs."[67] And a condition is *resolutory* if the obligation "may be immediately enforced but will come to an end when the uncertain event occurs."[68]

Applying Louisiana law, the Court should hold that the benefit-forfeiture provisions of the Grant Notices impose mere conditions on First Horizon's obligations relating to the incentive awards. The Grant Notices do not impose an unconditional non-solicitation obligation on Hoefer.

The plain text confirms that conclusion. Each Grant Notice awards Hoefer a benefit in the form of an incentive: "You have been granted a [type of award] by First Horizon Corporation."[69]

After awarding the incentive, each Grant Notice conditions First Horizon's obligations vis-à-vis the incentive on Hoefer's non-solicitation, which is an uncertain event: "this award will be forfeited, or if already vested [Hoefer] must pay in cash to [First Horizon] the gross pre-tax value...*if*...." Hoefer solicits First Horizon employees during the restriction period.[70]

Put in civil law parlance, First Horizon's obligation to grant Hoefer the incentive award, or to let him keep that award, is subject to the condition of Hoefer's not soliciting First Horizon employees during the applicable restriction period. If Hoefer solicits, then First Horizon's obligation to grant Hoefer the incentive award (or to let Hoefer keep it) "come[s] to an end."[71]

---

[66]   *See City of New Orleans v. Tex. & P. Ry. Co.*, 171 U.S. 312, 334 (1898) (equating the suspensive condition to "the condition precedent at common law."); *Zemurray v. Boe*, 105 So. 2d 243, 249 (La. 1958) (a resolutory condition "corresponds to the condition subsequent") (quotation omitted).

[67]   La. Civ. Code art. 1767.

[68]   *Id.*

[69]   *E.g.*, Exhibit A, Grant Notices, p. 1.

[70]   See *id.* (emphasis added).

[71]   La. Civ. Code art. 1767.

The upshot is this: Hoefer did not assume an absolute obligation not to solicit First Horizon employees; non-solicitation is just a condition of receiving or keeping an economic incentive. In the Grant Notices, Hoefer merely acknowledged that condition—*i.e.*, that he would forfeit his award, or have to repay it to First Horizon, if he solicited. Whether to do so was his choice, albeit one that would come at a price. So, under Louisiana law, the Grant Notices do not impose on Hoefer any independent non-solicitation obligation. First Horizon cannot win on the merits.

### 3. First Horizon's anticipated counterarguments fail.

In prior briefing, First Horizon raised six responses resisting the commonsense conclusion that the Grant Notices are benefit-forfeiture provisions that do not create any independently enforceable non-solicitation obligation.[72] Each of those responses is unpersuasive.

*First*, First Horizon faulted Defendants for what it called "a misrepresentation of the Grant Notices."[73] It is unclear how Defendants "misrepresent[ed]" a document they quoted.[74] Here, Defendants have again quoted the Grant Notices. And for the Court's convenience, Defendants have attached the Grant Notices in full as Exhibit A.[75] The Court can read the Grant Notices for itself and decide whether Defendants have "misrepresent[ed]" anything.[76] Defendants have not.

---

[72] Doc. 17, reply in support of motion for expedited discovery, pp. 6–9.

[73] *Id.*, p. 6.

[74] *Id.*

[75] *See* Exhibit A, Grant Notices.

[76] Doc. 17, reply in support of motion for expedited discovery, p. 6.

***Second***, First Horizon claimed that non-solicitation is not a "condition precedent" because First Horizon awarded Hoefer incentives "before [his] restriction period ended."[77] But this response misunderstands Defendants' argument and the law of conditional obligations. To be clear, Defendants' argument does not depend on non-solicitation being a condition precedent rather than subsequent; it depends on non-solicitation being a condition of the incentive awards rather than an independent obligation.

On that score, the plain text of the Grant Notices confirms that non-solicitation is just a condition to First Horizon's obligation to bestow the incentive awards. First Horizon's obligation to grant Hoefer an incentive (or to let him keep it) depends on an uncertain event: Hoefer's non-solicitation of First Horizon employees. Once it is established that non-solicitation is just a condition, and not an obligation in its own right, it does not matter whether that condition is then characterized as suspensive (precedent) or resolutory (subsequent). Either way, it is just a condition. If First Horizon wanted to extract from Hoefer an unconditional promise not to solicit, it could have done so—most likely in an employment agreement. But it didn't. The Court should decline First Horizon's invitation to rewrite the Grant Notices that First Horizon itself drafted.

***Third***, First Horizon cited Civil Code articles 1994–1997 and insisted that its remedy reaches beyond forfeiture (or repayment) of the incentives it awarded Hoefer.[78] But this response, too, rests on a misreading of the Grant Notices and a misunderstanding of Defendants' argument. Defendants have no quarrel with the Civil Code articles governing the measure of damages for breach of a conventional obligation. But the point here is not the measure of damages; it is the

---

[77]      *Id.*, p. 7

[78]      *Id.*, p. 8.

obligations that Hoefer undertook. And as a matter of Tennessee and Louisiana law, Hoefer did not undertake any independent non-solicitation obligation. First Horizon cannot recover for breach of an obligation that the plain text of the Grant Notices refutes.

*Fourth*, First Horizon insisted that Civil Code articles 1756 and 1987 allow an injunction to enforce a conventional obligation. But that generalized assertion does not respond to Defendants' arguments. No one denies that obligations are defined in article 1756 or that a right to specific performance is set out in article 1987. Those are not the relevant questions. The relevant question, instead, is whether the Grant Notices impose any non-solicitation obligation on Hoefer. As explained above, as a matter of Tennessee and Louisiana law, they do not. Because the Grant Notices create no freestanding non-solicitation obligation, articles 1756 and 1987 do not help First Horizon.[79]

*Fifth*, First Horizon faulted Defendants for citing Delaware cases to show how benefit-forfeiture provisions work. First Horizon complained that Defendants did not "provid[e] any explanation as to why they believe Delaware law should apply…"[80] But Defendants are not claiming, and have never claimed, that Delaware law controls. Defendants cite Delaware cases (and cases applying other states' laws) to illustrate how other courts have construed benefit-forfeiture provisions materially indistinguishable from the Grant Notices. Benefit-forfeiture provisions are standard fare in Delaware.[81] The same cannot be said for courts in traditionally less business-centric

---

[79]    Nor does La. R.S. 23:921(H) do any work. First Horizon's opening brief disclaimed the applicability of La. R.S. 23:921. Doc. 9-1, memorandum supporting application for preliminary injunction, p. 8.

[80]    Doc. 17, reply supporting motion for expedited discovery, p. 8.

[81]    *See LKQ I*, 96 F.4th at 980 (noting the "common use of restrictive stock unit agreements governed by Delaware law").

states like Louisiana and Tennessee. Given Delaware's status as the leading state for business, it is unsurprising that its jurisprudence would help illuminate this recurring issue of corporate law.

*Finally*, First Horizon suggested it is Defendants' burden to "identify[] a[] Louisiana court that has adopted the Delaware rule" for interpreting benefit-forfeiture provisions like the Grant Notices.[82] But that flips the burdens. Defendants are here on First Horizon's motion for a preliminary injunction. The burden of persuasion is on First Horizon.[83] If First Horizon thinks an on-point case from Tennessee or Louisiana is needed, it is First Horizon's burden to produce one that interprets a benefit-forfeiture provision in a manner differently from the interpretation offered here.

### B. Given that the Grant Notices feature mere benefit-forfeiture provisions, First Horizon cannot establish the remaining prerequisites for injunctive relief.

The legal characterization of the Grant Notices as containing benefit-forfeiture provisions is dispositive of the remaining prerequisites for a preliminary injunction. As Defendants have shown, under the laws of both Tennessee and Louisiana, the Grant Notices do not impose any independent non-solicitation obligation. It follows directly from that legal conclusion that First Horizon cannot "clearly carr[y] the burden" of persuading the Court that the remaining prerequisites for obtaining a preliminary injunction are met.[84]

---

[82]      Doc. 17, reply supporting motion for expedited discovery, p. 8.

[83]      *See AbbVie, Inc.*, 152 F.4th at 642 (explaining the preliminary-injunction movant must "clearly carr[y] the burden of persuasion") (quotation omitted).

[84]      *Id.*

### 1. Because the Grant Notices provide a built-in remedy for solicitation, First Horizon cannot establish irreparable harm as a matter of law.

The text of the Grant Notices confirms First Horizon cannot "clearly carr[y] the burden" of showing it will suffer irreparable injury absent a preliminary injunction.[85] "Irreparable injury is harm for which there is no adequate remedy at law."[86] The Grant Notices are First Horizon's own instruments. In them, First Horizon itself chose the remedies for nonfulfillment of the non-solicitation condition: Hoefer would (1) forfeit the incentives that had not vested, and (2) return the incentives that had already vested.[87] Because that forfeiture/claw-back remedy is built into the instruments First Horizon drafted, First Horizon cannot show irreparable injury as a matter of law.

### 2. Granting an injunction would unjustifiably restrain Defendants; denying one would hold First Horizon to terms of its own Grant Notices.

The Grant Notices do not create any non-solicitation obligation, so First Horizon would face no "threatened injury"[88] if an injunction were denied. It would simply be held to the terms of its own Grant Notices. But if an injunction were granted, Hoefer and DMMS would be restrained through the erroneous transformation of benefit-forfeiture provisions into restrictive covenants.

### 3. Interpreting the Grant Notices as written is in the public interest; rewriting them to impose new obligations is not.

The plain text of the Grant Notices confirms they impose no independently enforceable non-solicitation obligation on Hoefer. Granting a preliminary injunction would require rewriting the Grant Notices to impose non-solicitation obligations not found in the document First Horizon

---

[85]   *Id.*

[86]   *Anibowei v. Morgan*, 70 F.4th 898, 902 (5th Cir. 2023) (quotation omitted).

[87]   *E.g.*, Exhibit A, Grant Notices, p. 1.

[88]   *AbbVie, Inc.*, 152 F.4th at 642 (quotation omitted).

itself drafted. Enforcing legal documents as written is in the public interest; rewriting them is not.[89] Because a preliminary injunction would require rewriting the Grant Notices, First Horizon cannot carry its burden to show that granting a preliminary injunction would serve the public interest.

## IV. CONCLUSION

First Horizon fails to carry its "heavy burden"[90] to show that it is entitled to a preliminary injunction enforcing instruments it drafted. The benefit-forfeiture provisions of the Grant Notices do not create a non-solicitation obligation that can support First Horizon's request for the "extraordinary and drastic remedy"[91] of a preliminary injunction. The motion should be denied.

Respectfully submitted,

/s/ Thomas M. Flanagan
Thomas M. Flanagan, T.A. (#19569)
Anders F. Holmgren (#34597)
Alixe L. Duplechain (#39167)
Jordan B. Redmon (#37272)
FLANAGAN PARTNERS LLP
201 St. Charles Avenue, Suite 3300
New Orleans, Louisiana 70170
Telephone: (504) 569-0235
Facsimile: (504) 592-0251
tflanagan@flanaganpartners.com
aholmgren@flanaganpartners.com
aduplechain@flanaganpartners.com
jredmon@flanaganpartners.com


*Counsel for Karl Hoefer*

/s/ Joelle F. Evans
Kyle Schonekas, T.A. (#11817)
Joelle F. Evans (#23730)
Andrea V. Timpa (#29455)
Benjamin O. Flaxenburg (#37682)
SCHONEKAS EVANS MCGOEY &
MCEACHIN, LLC
909 Poydras Street, Suite 1600
New Orleans, Louisiana 70112
Telephone: (504) 680-6050
Facsimile: (504) 680-6051
kyle@semmlaw.com
joelle@semmlaw.com
andrea@semmlaw.com
benjamin@semmlaw.com


*Counsel for DMMS Holdings, LLC*

---

[89] *E.g.*, *Molycorp Minerals, LLC v. Mingus Constructors, Inc.*, No. 13-CV-2141, 2013 WL 6661636, at *4 (D. Colo. Dec. 17, 2013) (public interest in enforcing contracts as written would be disserved by granting a preliminary injunction that would have allowed a party to escape a contract's terms).

[90] *Hardin*, 572 F.2d at 1107.

[91] *AbbVie, Inc.*, 152 F.4th at 642.