| | |
|---|---|
| FIRST HORIZON CORPORATION | CIVIL ACTION NO. 3:26-cv-00182 |
| VERSUS | JUDGE BRIAN A. JACKSON |
| KARL HOEFER and DMMS HOLDINGS, LLC | MAGISTRATE JUDGE ERIN WILDER-DOOMES |

**REPLY MEMORANDUM IN SUPPORT OF
DEFENDANTS' RULE 12(B)(6) MOTION TO DISMISS**

Defendants, Karl Hoefer ("Hoefer") and DMMS Holdings, LLC ("DMMS"), respectfully submit this Reply Memorandum in Support of their Rule 12(b)(6) Motion to Dismiss. First Horizon's Opposition to the motion to dismiss merely re-urges the same inadequate allegations of the Complaint and misstates the applicable law. The Court should decline to allow First Horizon to use its Opposition to amend the Complaint and should instead grant dismissal under Rule 12(b)(6).

**I.      FIRST HORIZON DID NOT ASSERT A CLAIM FOR ORDINARY BREACH OF CONTRACT.**

First Horizon's first argument is that the "Motion to Dismiss must be denied because it concedes the Complaint states a claim for breach of contract…." Doc. 15, p. 2. First Horizon's Complaint, however, does not assert an ordinary breach of contract claim.  Doc. 1, pp. 15-23. And whether or not First Horizon could have done so is irrelevant because First Horizon cannot amend its complaint through its Opposition. *See Becnel v. St. Charles Par. Sheriff's Off.*, No. 15-cv-1011, 2015 WL 5665060, at *1 n. 3 (E.D. La. Sept. 24, 2015) ("[I]t is axiomatic that a complaint cannot be amended by briefs in opposition to a motion to dismiss." (internal quotations and citation omitted)). But in all events, even if First Horizon had properly pleaded an ordinary breach of

contract claim, it would fail as pleaded for lack of an underlying, independent non-solicitation obligation, as explained in Defendants' preliminary-injunction opposition, Doc. 21.

Along the same lines, First Horizon's position that Count I of the Complaint asserts two separate causes of action should be rejected. Count I is entitled, "COUNT I: Bad Faith Breach of Non-Solicitation Agreement." Doc. 1, p. 15. Count I does not recite the elements for an ordinary breach of contract claim, and the Complaint does not contain a separate count for such a claim elsewhere. Rather, it discusses the law related to the separate claim for bad faith breach. *Id.*, ¶¶ 66, 71-72. To be sure, First Horizon concedes that a breach of contract claim and a bad faith breach of contract claim are different causes of action, arguing "whether an obligor has breached a contract and whether he did so in bad faith **are two separate and distinct inquiries**." Doc. 15, p. 3 (emphasis added). Yet First Horizon has not asserted two "separate and distinct" claims.

This Court's decision in *River House Partners, LLC v. Grandbridge Real Estate Capital LLC*, CV 15-00058-BAJ-RLB, 2015 WL 6142874, at *1 (M.D. La. Oct. 19, 2015), does not support First Horizon's position that it has pleaded a claim for ordinary breach of contract. There, unlike here, the plaintiff's complaint alleged each of its causes of action separately, including, among others, a breach of contract claim (as count one) and bad faith breach of contract claim (as count two). *See* Doc. 1-2 in case 3:15-cv-00058 (referenced repeatedly by the district court in the *River House* opinion), attached hereto as Exhibit "1," pp. 9-10. This Court properly "[e]valuat[ed] each claim separately," and properly dismissed the second count while denying dismissal of the first count. *River House*, 2015 WL 6142874 at **1-4; *see also* Exhibit "1." Unlike the complaint in *River House*, First Horizon's complaint nowhere pleads an ordinary breach of contract claim. *River House*, therefore, does not save First Horizon's doomed Complaint.

**II.    THE DISTINCT CLAIM OF BAD FAITH BREACH OF CONTRACT IS NOT SUFFICIENTLY ALLEGED.**

Nothing in First Horizon's Opposition changes the fact that its Complaint contains no specific factual allegations to satisfy the pleading standards for a claim for bad faith breach of contract. First Horizon merely sets out the legal elements of this cause of action and then states in conclusory fashion that its factual allegations are sufficient. They are not. First Horizon also fails to discuss a single case in which similar facts were found sufficient to show bad faith breach of contract. Of the cases cited, the most analogous case, *River House*, supports dismissal of First Horizon's bad faith breach of contract claim.

Further, while First Horizon claims there are a "multitude of facts" supporting the bad faith breach claim, it fails to point to any well-pleaded factual allegations. Doc. 15, p. 6. That is because the Complaint does not actually contain any non-conclusory allegations of bad faith. First Horizon argues that "Hoefer used improper means and had a spiteful motive" and acted with "conscious deceit" yet does not point to a single specific allegation in support of those threadbare contentions. Doc. 15, p. 6. Instead, First Horizon's Opposition repeats the Complaint's conclusory allegations— none of which show bad faith—and then labels them as "bad faith." *Id.*, pp. 6-7. The only purported "lie" First Horizon points to is counsel's response to the cease-and-desist letter sent by First Horizon's counsel accusing Hoefer of "unlawful actions." That Hoefer availed himself of counsel to respond to First Horizon's heavy-handed cease-and-desist letter—through which First Horizon sought to impose obligations which Hoefer never agreed to—in no way establishes any bad faith on the part of Hoefer. Even assuming every single fact alleged in the Complaint regarding Hoefer's alleged solicitation of DMMS employees were true, those facts simply do not show that Hoefer acted maliciously, dishonestly, fraudulently, or immorally. *River House Partners*, 2015 WL 6142874 at *4.

**III. A BREACH OF CONTRACT DOES NOT VIOLATE LUTPA.**

As with its bad faith claim, First Horizon's Complaint fails to sufficiently plead a LUPTA violation. And that flaw cannot be remedied by its Opposition.

First Horizon contends that (1) Hoefer's and DMMS's alleged "scheme" to breach Hoefer's contract with First Horizon and/or (2) Hoefer's alleged "bad-faith breach of contract, along with DMMS's complicity" constitute violations of LUTPA. Doc. 15, p. 9. As shown in Defendants' original memorandum, Louisiana law is clear that breaches of contract do not constitute violations of LUTPA. *Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc.*, 09-1633, p. 10 (La. 4/23/10), 35 So. 3d 1053, 1059-60. And First Horizon's attempts to argue around *Cheramie* are unavailing. For the same reasons stated above, the Complaint does not contain specific non-conclusory facts demonstrating "egregious" conduct or an "unlawful or improper purpose" that would violate LUTPA. Rather, First Horizon's LUTPA claim is based solely on an alleged solicitation of First Horizon employees. *See* Doc. 1, ¶ 80 ("Hoefer's actions amount to fraud, misrepresentation, deception, breach of fiduciary duty, unscrupulous and unethical conduct, including, without limitation, soliciting and diverting First Horizon's employees to DMMS."). Because First Horizon's LUTPA claim is premised only on allegations of a contractual breach and threadbare labels, it is insufficient as a matter of law.

First Horizon's reliance on *Volt Power, LLC v Deville*, 1:21-cv-00395, 2021 WL 1554435, *5 (W.D. La. Apr. 20, 2021), is misplaced. The partial Rule 12(b)(6) motion in that case sought dismissal of three of nine causes of action, namely, specific performance, breach of contract, and LUTPA claims. *Id.* at *2. The defendant did not argue—nor did the district court consider—that the plaintiff failed to plead sufficient factual allegations to state a claim under LUTPA. Rather, as explained by the district court, the defendant argued that because the non-solicitation and non-

compete agreements on which the plaintiff's LUTPA claim "hinge[d]" were unenforceable and invalid, the LUTPA claim arising from violations of those agreements failed as a matter of law. *Id.* Presented only with that narrow contractual defense, the district court neither addressed nor had the occasion to address whether a LUTPA claim must allege more than a mere breach of an agreement to pass muster at the initial pleading stage. *Id.* at **4-5.

Similarly, the facts in *Volentine v. Raeford Farms of Louisiana, LLC*, 201 So. 3d 325, 353-54 (La. App. 2 Cir. 8/15/16), are entirely distinguishable from the vague allegations at issue. In *Volentine*, after a trial on the merits, the defendant was found to have breached a contract in bad faith and violated LUTPA. The evidence was overwhelming that the defendant manufactured and exaggerated alleged violations of the contract to shut down plaintiff's farm. *Id.* at 345. The defendant then set unreasonable deadlines and conditions which prevented the plaintiff's ability to mitigate their damages. *Id.* The defendant also intentionally embarrassed and humiliated the plaintiff. *Id.* The evidence showed that the defendant had a personal vendetta and improper motive of retaliation because plaintiff had previously reported certain wrongful conduct of the defendant to the Louisiana Commissioner of Agriculture, and defendant sought to make "an example" out of plaintiff. *Id*. All told, the evidence showed that the defendant's conduct was "reprehensible and egregious" and that its motives were "dishonest" and "morally questionable."[1] First Horizon's Complaint, on the other hand, contains no such allegations, and First Horizon's reliance on *Volentine* is misplaced.

---

[1] First Horizon also cites a Florida statute and decision, which are not controlling, persuasive, or relevant. There is no reason to review jurisprudence from other states, based on different statutory language, when Louisiana's statute and case law, including that of the Supreme Court, interpreting LUTPA is comprehensive and well-developed. *Tyson v. Spearman*, 190 La. 871, 886; 183 So. 201, 206 (1938) ("Authorities of other jurisdictions are persuasive but cannot prevail over the settled jurisprudence of this Court."). It also cites *Brown & Root Indus. Servs., LLC v. Brown*, CV 21-00291-BAJ-SDJ, 2024 WL 4595597, at *7 (M.D. La. Oct. 28, 2024), but there the district court held that the "LUTPA counterclaim will be dismissed with prejudice." The decision contains no relevant discussion.

**IV.    TENNESSEE LAW DOES NOT APPLY; COUNTS III AND IV SHOULD BE DISMISSED.**

First Horizon does not address, and therefore concedes, that it has not and cannot state a cause of action against DMMS for tortious interference with contract under Louisiana law. In its Opposition, First Horizon argues that it is somehow entitled to bring common law and statutory claims for inducement of breach of contract under Tennessee law. Doc. 15, p.16. First Horizon criticizes Defendants' conflicts of law analysis because it "focuses exclusively on contacts each state has to the dispute and fails to examine the policies of Tennessee and Louisiana." *Id.* This argument is wrong.

First Horizon ignores its own allegation that all "**the events giving rise to this lawsuit took place in the State of Louisiana.**" Doc. 1, ¶ 7 (emphasis added). First Horizon also does not explain why Louisiana's unfair trade practices statute would apply under the facts alleged while Tennessee law would govern its claims for inducement of breach of contract. The reason is apparent: in this instance Louisiana law is more favorable because it encompasses a broader range of "unfair conduct" with the prospect of treble damages and attorney's fees. Tennessee's statute, conversely, offers a private right of action only regarding offenses which are not applicable here, while vesting authority to assert a more general claim for "engaging in any other act or practice which is deceptive to the consumer or to any other person" "exclusively" in the attorney general's office.  Tenn. Code § 47-18-104(b)(27).  Of course, First Horizon cannot have it both ways.

Setting First Horizon's preferences aside, it is apparent that Louisiana law must govern all tort and quasi-tort claims. And First Horizon's attempt to inflate the significance of Tennessee's interests in this dispute are unavailing. According to First Horizon, based on the parties' domiciles, "Tennessee and Louisiana have an equal number of contacts.". *Id.*, p. 17. Even if the "counting"

of contacts was appropriate under a choice of law analysis, which it is not,[2] First Horizon's count is off. Other than being the domicile of First Horizon, Tennessee has no other substantive contacts related to any dispute between DMMS and First Horizon.

First Horizon's next argument, that the "injury" was sustained in Tennessee, also must be rejected. First Horizon's own Complaint specifically alleges that the branches from which employees were purportedly "poached" were all located in Louisiana. *Id.*, ¶¶ 46, 48, 50, 51.

On the other hand, First Horizon nowhere alleges that DMMS committed any tortious conduct in Tennessee; rather all the alleged conspiring, inducement, and solicitation is alleged to have occurred in Louisiana (or possibly Texas although no specific examples are given). Doc. 1, ¶¶ 16-19, 29-31, 35, 36, 39-51, 57-58. In fact, there is not a single allegation of wrongful conduct by anyone in Tennessee. *Id.* And the Complaint alleges that DMMS was motivated by an alleged intent to compete with First Horizon in Louisiana and Texas yet says nothing about competition in Tennessee. Doc. 1, ¶ 15. Finally, DMMS has no contractual relationship with First Horizon and certainly not one centered in Tennessee.

At bottom, Tennessee's interest in this dispute is minimal if it has any at all. As such, Tennessee's "policies" would not be more seriously impaired than Louisiana's policies—*i.e.*, the state where DMMS is domiciled, where every alleged wrongful act occurred (and purportedly continues to occur), and where First Horizon seeks to enjoin the purported wrongful conduct.

Contrary to First Horizon's arguments, *Marchesani v. Pellerin-Milnor Corp.*, 269 F.3d 481, 484 (5th Cir. 2001), does not require a different result and is entirely distinguishable. The plaintiff

---

[2] As stated by the Louisiana Supreme Court, the factors listed in article 3542, the general rule for conflicts involving torts, "The listing of contacts is neither exhaustive nor hierarchical, and is intended to **discourage a mechanistic counting of contacts as a means of selecting the applicable law ... [T]he evaluation of factual contacts should be qualitative rather than quantitative**…" *Arabie v. CITGO Petroleum Corp.*, 10-2605, p. 10 (La. 3/13/12), 89 So. 3d 307, 316 (emphasis added).

in *Marchesani*, a Tennessee domiciliary, was injured at the mill where he worked in Tennessee when an allegedly defective piece of equipment, manufactured by a Louisiana defendant in Louisiana, blew open and injured him. The plaintiff filed his lawsuit in defendants' domicile, Louisiana, and argued that Louisiana's law should apply as to prescription. *Id.* The district court granted the defendant's motion for summary judgment finding the claim was time-barred under Tennessee law. *Id.* On review, the Fifth Circuit noted that the Louisiana Supreme Court declined to accept its request for certification of the question. *Id.*

Analyzing article 3549, which contains the specific rules related to conflicts of law on issues of prescription and peremption, the Fifth Circuit agreed with the district court that "the law of Tennessee applies to the merits of this case." *Id.* at 489-90. However, the court held that under the specific rules in the text of article 3549, Louisiana's law of prescription, not Tennessee's statute of repose, would be applied. *Id.* at 490-91. The analysis in *Marchesani*, most of which First Horizon misstates,[3] was guided by the specific text of article 3549 and is irrelevant here. Hoefer is alleged to have resigned from First Horizon in December 2025, about two months before this suit was filed. And Defendants have not asserted prescription as a basis for dismissal.

First Horizon conducts its analysis of the relevant "policies" of Tennessee and Louisiana in a vacuum without regard to the weight of the relevant contacts, which is what article 3542 requires. There is no merit to the position that Tennessee's policies would be most seriously injured simply because it happens to be the domicile of First Horizon. Domicile is but one of many factors considered. La. Civ. Code art. 3542. Moreover, that Tennessee law is more "comprehensive" and

---

[3] First Horizon states that "at issue in *Marchesani* was what state's law would apply to a products liability claim brough[t] by the plaintiff…." Doc. 15, p. 18. This is an oversimplification. Neither the district court nor the trial court had much difficulty concluding that the substantive law of Tennessee law applied to merits of the claim of a Tennessee domiciliary injured in Tennessee. What was primarily at issue in *Marchesi* is which state's law of limitations/prescription would apply under the rules peculiar to article 3549, and the answer was Louisiana.

recognizes a cause of action which Louisiana rejects, is not grounds to elevate the alleged importance of Tennessee's "policies" above Louisiana. *See Ardoyno v. Kyzar,* 426 F. Supp. 78, 82 (E.D. La. 1976) (holding Louisiana law, which did not recognize the tortious-interference cause of action in question, nonetheless had more significant interest than Mississippi when the relevant contacts were considered).

The only conclusion that can be reached based on the allegations of the Complaint is that Louisiana has the greater interest and its substantive law would be more seriously impaired if not applied here. Under the facts alleged, DMMS, a Louisiana domiciliary, cannot be subjected to tort liabilities based on divergent out-of-state theories of tort liability when the alleged tortious conduct occurred solely in Louisiana. First Horizon's Tennessee claims, therefore, must be dismissed.

## V.      THE CONSPIRACY COUNT SHOULD BE DISMISSED.

First Horizon argues that its claim for "civil conspiracy" pleaded under Louisiana law should not be dismissed. First Horizon, however, concedes that a conspiracy claim based on breach of contract is not recognized in Louisiana law. Doc. 15, p. 23. Instead, First Horizon claims a conspiracy to violate LUTPA is actionable. *Id.* For all the reasons stated above, First Horizon has not stated a cause of action under LUTPA, and its derivative civil conspiracy claim also fails.

First Horizon's reliance on *Sedgwick Claims Mgmt. Servs., Inc. v. Dodd*, CV 24-2942, 2025 WL 2799032, at *1 (E.D. La. Oct. 1, 2025) is misplaced. *Sedgwick*, respectfully, is an outlier, and this Court is not bound by the decisions rendered in other districts.

Further, in *Sedgwick*, the district court recognized that a LUTPA claim cannot be based on a mere breach of contract. The district court instead found that the plaintiff stated a LUTPA claim for the following reasons:

> The crucial elements that distinguish the breach of contract claim and the LUTPA claim against Dodd **is "the breach of a special relationship of trust" and the alleged use of Plaintiff's confidential information in soliciting Plaintiff's employees**. For these reasons, the Court finds that the allegations set out in the Amended Complaint plausibly assert a claim under LUTPA.

*Id.* at *8 (emphasis added). Unlike the facts alleged in *Sedgwick*, First Horizon's Complaint does not allege any use of "confidential information" or breach of a "special relationship of trust." *Sedgwick* must be held to its facts. It does not apply here.

## VI. THE REQUEST FOR INJUNCTIVE RELIEF SHOULD ALSO BE REJECTED.

Independent of First Horizon's failure to plead any plausible claims, First Horizon is not entitled to a preliminary injunction, as a remedy, for the reasons given in Defendants' opposition to the motion for a preliminary injunction. *See* Doc. 21. Those reasons are purely legal, do not require consideration of any facts, and are distinct from the reasons given in the Rule 12(b)(6) briefing. Accordingly, even if the Court disagrees with Defendants' Rule 12(b)(6) arguments, First Horizon is nonetheless not entitled to a preliminary injunction because its own instruments—the Grant Notices—do not create any freestanding non-solicitation obligation enforceable by an injunction.

**<u>CONCLUSION</u>**

For the foregoing reasons, and those previously stated, dismissal under Rule 12(b)(6) is warranted, and the motion filed by Defendants, Karl Hoefer and DMMS Holdings, LLC, should be granted.

Respectfully submitted,

/s/ Thomas M. Flanagan
Thomas M. Flanagan, T.A. (#19569)
Anders F. Holmgren (#34597)
Alixe L. Duplechain (#39167)
Jordan B. Redmon (#37272)
FLANAGAN PARTNERS LLP
201 St. Charles Avenue, Suite 3300
New Orleans Louisiana 70170
Telephone: (504) 569-0235
Facsimile: (504) 592-0251
tflanagan@flanaganpartners.com
aholmgren@flanaganpartners.com
aduplechain@flanaganpartners.com
jredmon@flanaganpartners.com

*Attorneys for defendant, Karl Hoefer*

/s/Joelle F. Evans
Kyle Schonekas, T.A. (#11817)
Joelle F. Evans (#23730)
Andrea V. Timpa (#29455)
Benjamin O. Flaxenburg (#37682)
SCHONEKAS EVANS McGOEY &
McEACHIN, LLC
909 Poydras Street, Suite 1600
New Orleans, Louisiana 70112
Telephone: 504-680-6050
Facsimile: 504-680-6051
kyle@semmlaw.com
joelle@semmlaw.com
andrea@semmlaw.com
benjamin@semmlaw.com

*Attorneys for defendant, DMMS Holdings, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 2, 2026, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/Joelle F. Evans
JOELLE F. EVANS