FIRST HORIZON CORPORATION
        Plaintiff                            Civil Action No. 26-cv-00182-BAJ-EWD

versus                                      District Judge Brian A. Jackson

                                               Magistrate Judge Erin Wilder-Doomes
KARL HOEFER and DMMS HOLDINGS, LLC

        Defendants.

## <u>REPLY IN SUPPORT OF FIRST HORIZON CORPORATION'S<br>APPLICATION FOR PRELIMINARY INJUNCTION</u>

Plaintiff First Horizon Corporation ("Plaintiff" or "First Horizon") submits this reply in support of its Application for Preliminary Injunction.

## I.    Issue Presented for Review

The Court's Telephone Conference Report level sets the sole legal issue for this Court's determination, as follows: "If the Court finds that the Grant Notices create an enforceable non-solicitation obligation on Hoefer, Defendants will stipulate to an injunction, prohibiting Hoefer and DMMS from soliciting FHC's employees."[1] Defendants offered that stipulation to "obviate[] the need for expedited discovery."[2] Accordingly, Defendants do not contest any of the factual allegations in First Horizon's Complaint or underlying application, including that Defendants engaged in a scheme to recruit First Horizon employees while obscuring Hoefer's involvement to maintain the appearance that Hoefer remained compliant with his non-solicitation obligations.

Hoefer and DMMS frame the legal issue as follows: "Each Grant Notice awards Hoefer a benefit (the incentive) subject to a condition (non-solicitation). Hoefer can refrain from soliciting and keep the incentive. Or he can solicit and forfeit the incentive (or repay it). Hoefer has no

---

[1] R. Doc. 20.
[2] R. Doc. 20, p. 2.

independent obligation not to solicit."[3] Later in the opposition, Hoefer and DMMS rely upon the effects of the occurrence of a resolutory condition, provided by La. C.C. art. 1767, to erroneously claim: "If Hoefer solicits, then First Horizon's obligation to grant Hoefer the incentive award (or let Hoefer keep it) 'come[s] to an end.'"[4] Hoefer and DMMS's error in the preceding passage is that it is undisputed that First Horizon performed its obligation by granting Hoefer over $1 million in financial incentives pursuant to the Grant Notices.[5] First Horizon has no duty to recover the awards from Hoefer. With Hoefer having received substantial financial rewards, he – not First Horizon – is the only person who has an outstanding obligation under the Grant Notices.

Additionally, as discussed below, nearly seventy-five years ago, the Louisiana Supreme Court addressed and rejected Hoefer and DMMS's argument that an employee non-solicitation agreement creates a conditional obligation. Since that time, courts in Louisiana have issued injunctions to enforce non-solicitation agreements, even when they contain forfeiture provisions. With Louisiana law clearly in First Horizon's favor, this Court should issue an injunction to enjoin Hoefer's and DMMS's ability to solicit or encourage First Horizon's employees to resign.

**II.     The Employee Non-Solicitation Provisions in Hoefer's Grant Notices are Enforceable and Can Be Enforced by an Injunction**

Long ago, in the case of *Martin-Parry Corp. v. New Orleans Fire Detection Serv.*, 221 La. 677, 681, 60 So. 2d 83, 84 (1952), the Louisiana Supreme Court held that employee non-solicitation agreements do not create conditional obligations. In *Martin-Parry*, in exchange for salary, commissions and other emoluments, the defendant former-employee agreed that, during his employment and for two years thereafter, he would not "disturb, hire, entice away, or in any other manner persuade any employee… of the [plaintiff-]Company to discontinue his relation to

---

[3] R. Doc. 21, p. 8.
[4] R. Doc. 21, p. 21.
[5] R. Doc. 1, ¶¶20-28.

the Company as an employee." *Id.* The plaintiff sought an injunction, but defendant achieved dismissal from the lower courts on the grounds that the agreement created a conditional obligation with his agreement to refrain from soliciting employees being a potestative condition.[6] *Id.* at 84-85. The Louisiana Supreme Court disagreed and reversed. With the agreement being a "bilateral commutative contract" by which the defendant agreed to the non-solicitation obligation in exchange for employment and compensation, the court found that "there was nothing conditional about the promise; it was absolute." *Id.* at 84-85. The Louisiana Supreme Court further stated: "Surely, the absolute promise of defendant to desist from interference with plaintiff's employees and dealers after the termination of his employment bears little resemblance to a potestative condition." *Id.* at 85.

Building and relying upon that result, Louisiana courts recognize that an employer "is entitled to injunctive relief to enforce the provisions of the employment contract." *Buckeye Garment Rental Co. v. Jones*, 276 F. Supp. 560, 562 (E.D. La. 1967) (citing *Martin-Parry Corp. v. New Orleans Fire Detection Service*, 221 La. 677, 60 So.2d 83 (1952)); *see also La. C.C. art. 1987* that reads: "The obligor may be restrained from doing anything in violation of an obligation not to do."

The presence of a forfeiture provision does not diminish an employer's ability to obtain injunctive relief against a former employee for violating their non-solicitation obligation. Such was illustrated in the case of *Smith, Barney, Harris Upham & Co. v. Robinson*, 12 F.3d 515, 517 (5th Cir. 1994), where the former employee received incentive compensation that he agreed to

---

[6] Under former La. C.C. art. 2024 (1870), a potestative condition is "one 'which makes the execution of the agreement depend on an event which it is in the power of the one or the other of the contracting parties to bring about or to hinder.'" *Martin-Parry*, 60 So. 2d at 85. The presence of a potestative condition "renders the obligation null as to the obligor." *Id.*

return in the event he resigned, and in the same agreement the employee agreed to not solicit the employer's employees for one year after his resignation. After the defendant resigned and began engaging in a "flagrant breach" of the agreement by soliciting plaintiff's employees to go work for a competitor, the Eastern District of Louisiana granted the employer's request for an injunction to enforce the employee non-solicitation agreement. *Id.* at 518. On appeal, the Fifth Circuit affirmed the issuance of the injunction. *Id.* at 521. In doing so, the court rejected the defendant's argument that the non-solicitation provision is unenforceable for lack of consideration because the employer was seeking a return of incentive payments. The Fifth Circuit held that the agreement was a "bilateral, commutative contract" with reciprocal promises that supply the consideration to support the contract. *Id.* at 520.

In this case, it is undisputed that Hoefer became vested with substantial financial awards under the Grant Notices (i.e. RSUs, LTIs, Retention RCUs) and that in exchange Hoefer agreed to refrain from soliciting, hiring, or encouraging First Horizon employees to leave their employment, which non-solicitation obligation persists until May 12, 2027.[7] The Grant Notices are bilateral, commutative contracts, which as the Louisiana Supreme Court provided in *Martin-Parry* are absolute and do not create conditional obligations. As to the issue set forth in the Court's Telephone Conference Report, the law answers in the affirmative in First Horizon's favor, *i.e.,* the Grant Notices impose enforceable non-solicitation obligations on Hoefer.

Rather than creating conditional obligations, the Grant Notices create a term obligation. "A term for the performance of an obligation is a period of time either certain or uncertain. It is certain when it is fixed." *La. C.C. art. 1778*. Each Grant Notice sets a Restriction Period that ends on "the second anniversary of the Vesting Date," at which point Hoefer would become free of the non-

---

[7] R. Doc. 1, ¶¶20-27.

solicitation obligations.[8] The forfeiture remedy in the Grant Notices does not affect the term or the obligation itself. Hoefer and DMMS believe that forfeiture cuts off Hoefer's obligations during the fixed term, but the obvious purpose and structure of the Grant Notices does not support their mistaken belief. The non-solicitation restriction in the Grant Notices and the fixed restriction period are in place to prevent Hoefer from soliciting First Horizon employees and customers for a two-year period. Indeed, if First Horizon did not intend to impose on Hoefer a non-solicitation obligation for the entirety of the term, the provision in the Grant Notices regarding the Restriction Period would be superfluous.

Notably, Defendants' recitation of basic contract law belies their own argument. They note that under Louisiana law, "[i]nterpretation of a contract is the determination of the <u>common intent</u> of the parties", and that the unambiguous terms of a contract control where the terms are "clear and explicit and <u>lead to no absurd consequences</u>".[9] Yet, Defendants' argument would lead to highly absurd consequences – a finding that First Horizon intended to bind Hoefer to a non-solicitation promise that ceased as soon as Hoefer breached it. That result is inconsistent with Louisiana's contract interpretation principles and the Grant Notice language setting a fixed restriction period. Reading the Grant Notices as giving Hoefer discretion to choose exactly when to breach his agreement and allowing Hoefer's exercise of that discretion to limit First Horizon's remedies during the two-year restriction period is, by definition, an absurd result.

Furthermore, in the events leading to this lawsuit, Hoefer and DMMS acknowledged the intended legal effect of the Grant Notices (consistent with the parties' common intent), but now seek to graft on a strained interpretation to limit their legal effect. Their attempt to do so must fail. The undisputed facts in First Horizon's Complaint demonstrate that Hoefer and DMMS believed,

---

[8] *Id.*
[9] R. Doc. 21, p. 20 (emphasis added).

at least up to the point of the filing of this lawsuit, that Hoefer's non-solicitation provisions in the Grant Notices endure despite Hoefer's breach of his obligations. On January 9, 2026, First Horizon reminded Hoefer, Byrd, Tipton, and Brown of Hoefer's non-solicitation obligations, as well as warning that First Horizon would seek all equitable and monetary remedies available to it, if Hoefer violates his obligations.[10] Byrd's statement to John Everett in early January 2026 that "Karl [Hoefer] can't call you," demonstrates a clear recognition by Hoefer and DMMS that Hoefer was subject to the non-solicitation obligations in the Grant Notices.[11] In the solicitation of every one of the First Horizon employees in January and early February of 2026, DMMS's principals made the initial contact with the First Horizon employee and then directed them to Hoefer, who principally conducted the recruitment thereafter.[12] Hoefer and DMMS stipulate, or at least do not contest, that Hoefer violated the obligations in the Grant Notices by soliciting and/or encouraging First Horizon's employees to leave First Horizon and join DMMS. Under Hoefer and DMMS's argument in their opposition, once Hoefer violated his obligations in early January 2026 with the first employee solicited (i.e. John Everett), Hoefer would free to solicit subsequent First Horizon employees (Marmande, Wharton, and Rudge). But that is not how Hoefer and DMMS acted, as they maintained the charade throughout the solicitation of each First Horizon employee. Even in his February 9, 2026 response to First Horizon's cease and desist letter, Hoefer believed that his non-solicitation obligations remained alive.[13] The facts demonstrate that Hoefer and DMMS knew Hoefer could not in any manner solicit First Horizon employees through May 2027, attempted to hide Hoefer's involvement in such solicitation, and now argue that Hoefer can invoke the forfeiture

---

[10] R. Doc. 1, ¶¶33-34.
[11] R. Doc. 1, ¶46.
[12] R. Doc. 1, ¶¶35-50.
[13] . Doc. 1, ¶¶53-54

feature of the Grant Notices to further Hoefer and DMMS's interests at the expense of First Horizon. That is not how contract law works in this or any state.

Finally, with Hoefer having violated his non-solicitation obligations, Louisiana law allows First Horizon to obtain an injunction to enjoin the same. Hoefer and DMMS's scheme is causing harm to First Horizon that only injunctive relief can remedy. An injunction remedies this future harm. Had First Horizon not filed this lawsuit, Hoefer would still be soliciting masses of First Horizon employees with impunity. Defendants' arguments in opposition to injunctive relief do not change the essence of Hoefer's obligation —the obligation to not, "directly or indirectly solicit, hire, or encourage" First Horizon employees to leave employment during the restriction period that "begins on the Grant Date and ends on the second anniversary of the Vesting Date" for each award. Whatever forfeiture or clawback remedies First Horizon may have, forfeiture or clawback does not terminate Hoefer's obligation to comply with his employee non-solicitation obligations through the applicable restriction period or cut off other damages First Horizon may seek. Like in *Smith, Barney, Harris Upham & Co.*, the presence of a forfeiture provision in the agreement to not solicit employees will not affect or lessen First Horizon's right to obtain an injunction under either Civil Code Article 1987 or the cases of *Martin-Parry Corp.* and *Buckeye, supra.* Apart from relying on the Civil Code Articles pertaining to conditional obligations, which do not apply to this case, Hoefer and DMMS have not identified any law in Louisiana that prohibits an injunction.

### III.    Louisiana Law Applies to the Grant Notices

In diversity cases, federal courts apply the substantive laws of the forum state. *Huss v. Gayden*, 571 F.3d 442, 450 (5th Cir. 2009). With respect to the violation and enforcement of Hoefer's obligations under the Grant Notices, First Horizon has only invoked Louisiana law.[14]

---

[14] *See* R. Doc. 1, Count I and Count II, ¶¶74-86.

Hoefer and DMMS attempt to muddy the waters in terms of which state's law applies by discussing the would-be result under Tennessee and Delaware law. This Court should reject Hoefer and DMMS's argument under the laws of other states. First, as provided by La. R.S. 23:921(A)(2), the public policy of Louisiana is that choice of law provisions that are contained in an "employment contract or agreement" "shall be null and void" unless and until the "choice of law clause is expressly, knowingly, and voluntarily agreed to and ratified by the employee after the occurrence of the incident which is the subject of the civil or administrative action." Hoefer and DMMS state in their opposition that they are "assuming (**without admitting**)" that the Tennessee choice of law provision in the Grant Notices are valid,[15] and they further state that "Defendnats are not claiming and have never claimed, that Delaware law controls."[16] Having refrained from ratifying the application of Tennessee law and having rejected Delaware law, whether the non-solicitation obligations in the Grant Notices are enforceable under either state's laws is wholly irrelevant and without merit. Even if the Court were to engage in a conflicts of law analysis, under La. C.C. arts. 3515 and 3537, *et seq.*, Louisiana law would still apply because, in addition to the public policy provided by La. R.S. 23:921(A)(2), Hoefer and DMMS are domiciled in Louisiana, Hoefer accepted and became vested under the Grant Notices while in Louisiana, and Hoefer and DMMS's actions all occurred in Louisiana. Moreover, as Hoefer and DMMS recently stated in their Reply Memorandum in Support Defendants' Rule 12(b)(6) Motion to Dismiss, "there is no reason to review the jurisprudence from other states … when Louisiana's statute and case law, including that of the Louisiana Supreme Court, … is comprehensive and well-developed,"[17] which as discussed above is certainly the case here.

---

[15] R. Doc. 21, p. 17 (emphasis added).
[16] R. Doc. 21, p. 24.
[17] R. Doc. 22, Footnote 1, p. 5.

Furthermore, the cases Hoefer and DMMS rely upon for the proposition of widespread adoption of Delaware law on benefit-forfeiture agreements are distinguishable and do not have the effect Defendants contend. Defendants cite *LKQ Corp. v. Rutledge*, 337 A.3d 1215 (Del. 2024)("*LKQ II*"), and *Cantor Fitzgerald, L.P. v. Ainslie*, 312 A.3d 674 (Del. 2024) as commanding that forfeiture provisions are not enforceable through injunctive relief. The issue before the Delaware courts in both *LKQ Corp.* and *Cantor Fitzgerald* was "whether the employee choice doctrine" or "reasonableness review" governed the interpretation of provisions in employment agreements. *LKQ II*, 337 A.3d at 1217.

Although *LKQ II* acknowledged that "a restricted stock unit agreement stands on different footing than underlies non-competition covenants," *LKQ II*, 337 A.3d at 1221, and that the provisions at issue in that case "were contractual conditions requiring former employees to forfeit certain monetary benefits upon leaving the company and joining a competitor" under Delaware law, the issue in the *LKQ* line of cases was whether the forfeiture provisions were enforceable. *LKQ Corp. v. Rutledge*, 126 F.4th 1247, 1248 (7th Cir. 2025)("[t]he Delaware Supreme Court's answer to our certified questions makes clear that LKQ can enforce its forfeiture-for-competition provision against Rutledge."). None of the *LKQ* cases stand for the proposition that forfeiture terminates all contractual obligations under Louisiana law, that forfeiture is the exclusive remedy for Hoefer's breach under Louisiana law, or that injunctive relief is not available under Louisiana law. *Cantor Fitzgerald*, which the *LKQ* cases cite, also applied the Delaware Revised Uniform Limited Partnership Act to interpret the provisions of a limited partnership agreement. 312 A.3d at 677, 688. Further, the employer in *Cantor Fitzgerald* "did not . . . request any injunctive relief." 312 A.3d at 682.

None of the Delaware cases Defendants cite address the consequences under Louisiana law on the continuing enforceability of non-solicitation obligations undertaken by the employee after he breaches the same.

**IV.     Defendants Improperly Challenge the Remaining Prerequisites for Injunctive Relief**

At a status conference to discuss First Horizon's Motion for Expedited Discovery, Defendants agreed that "FHC [First Horizon] does not need to make an evidentiary showing at the hearing" and further stipulated that they would stipulate to an injunction if the Court finds the Grant Notices create an enforceable non-solicitation obligation.[18] Defendants nonetheless contend that First Horizon cannot establish a threat of irreparable harm, and that an injunction would not serve the public interest. Defendants advanced the foregoing stipulation and therefore waived any arguments they may have to the other injunction factors. Nonetheless, Hoefer and DMMS base their arguments on the flawed notion that the Grant Notices create conditional obligations. By way of First Horizon's argument in Section II above, the Grant Notices create enforceable non-solicitation obligations. Hoefer remains subject to those obligations to this day, despite his breach.

**V.     Conclusion**

For all these reasons, First Horizon respectfully requests the entry of a preliminary injunction to mitigate and prevent the ongoing harm Hoefer and DMMS are causing. The Grant Notices create an obligation that Hoefer has breached, and so the Court should enjoin further breach by Hoefer, as well as enjoin DMMS from soliciting any First Horizon employee by or through Hoefer or any other employee who Hoefer solicited.

Respectfully submitted,

*/s/ Andrew J. Halverson*
Andrew J. Halverson, LA Bar No. 31184

---

[18] R. Doc. 20, at p. 2.

10

Michael C. Ledet, LA Bar No. 40430
**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
325 Settlers Trace Blvd., Suite 201
Lafayette, LA 70508
Telephone: (337) 769-6582
Facsimile: (337) 989-0441
Email: andrew.halverson@ogletreedeakins.com
michael.ledet@ogletreedeakins.com

***Attorneys for Plaintiff First Horizon Corporation***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing document has this date been served to all known counsel of record in this proceeding by:

| | | |
|---|---|---|
| ( ) Hand Delivery | ( ) | Prepaid U.S. Mail |
| ( ) Facsimile | ( ) | Federal Express |
| ( ) E-Mail | ( X ) | CM/ECF System |

Lafayette, Louisiana, this 7th day of April, 2026.

*/s/ Andrew J. Halverson*
Andrew J. Halverson

11

96492990.v1-OGLETREE