# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**FIRST HORIZON CORPORATION**                                    CIVIL ACTION

**VERSUS**

**KARL HOEFER, ET AL.**                                NO. 26-00182-BAJ-EWD

## RULING AND ORDER

Before the Court is Plaintiff's **Application for Preliminary Injunction (Doc. 9)**. Plaintiff asks the Court to enjoin Defendants Karl Hoefer and DMMS Holdings LLC ("DMMS") from recruiting employees of First Horizon through May 12, 2027. For the reasons stated herein, Plaintiff's Motion is **DENIED**.

## I.    FACTUAL BACKGROUND

Defendant Hoefer was employed as Executive Vice President and Regional Manager at First Horizon Corporation ("Plaintiff") from July 2020 until his resignation on December 30, 2025. (Doc. 1 ¶ 18; Doc. 9 at 2). This case addresses whether financial awards First Horizon gave Hoefer prohibit Hoefer and his new employer, DMMS, from recruiting First Horizon employees.

Defendant Hoefer received and accepted various financial awards from First Horizon while in its employ. (Doc. 1 ¶ 20). These financial awards were provided through "Grant Notices" drafted by First Horizon. (*Id.* ¶ 21; Doc. 29 at 22). The Grant Notices list a Grant Date (the date the award was given to Defendant Hoefer), a Vesting Date (the date Defendant Hoefer would gain full ownership of the award),

and the following language regarding the solicitation of First Horizon employees:

> [T]his award will be forfeited, or if already vested you must pay in cash to [First Horizon] the gross pre-tax value of this award measured at vesting, if during the restriction period applicable to this award . . . you, either on your own behalf or on behalf of any other person or entity, in any manner directly or indirectly **solicit, hire, or encourage any person who is then an employee or customer of [First Horizon]** or any and all of its subsidiaries or affiliates **to leave the employment of**, or to end, diminish, or move any of his, her, or its accounts or relationships with, [First Horizon] or any and all of its subsidiaries or affiliates. The restriction period for each portion of this award begins on the Grant Date and ends on the second anniversary of the applicable Vesting Date.

(Doc. 1-1 at 1 (emphasis added)). The Grants Notices also contain a choice of law provision:

> This award is governed by the substantive laws of Tennessee, without regard to conflicts of laws principles.

(*Id.*).

The Grant Notices provide that the restriction period begins on the Grant Date and ends on the second anniversary of the applicable Vesting Date. (Doc. 1-1 at 1). Under the terms of the most recent Grant Notices, the solicitation provision above applies through May 12, 2027. (Doc. 1 ¶¶ 24–27). Defendant Hoefer received a sum totaling over $1 million in financial awards from First Horizon through these Grant Notices. (*Id.* ¶ 28; Doc. 30 at 1).

Shortly after his resignation from First Horizon on December 30, 2025, Defendant Hoefer began working for Defendant DMMS, a competitor of First Horizon (Doc. 1 ¶¶ 30–31). According to First Horizon, Defendant Hoefer began recruiting

2

First Horizon employees to DMMS as early as January 3, 2026. (*Id.* ¶ 46). First Horizon alleges that Defendants Hoefer and DMMS have formulated and exercised a scheme by which: a DMMS principal makes a brief initial phone call to a targeted First Horizon employee to inform them of the opportunity to work for DMMS; the principal directs the First Horizon employee to call Hoefer for more information, with virtually all contact from that point on between Hoefer and the First Horizon employee; and once the employee calls Hoefer, Hoefer persuades the employee to work for DMMS by offering an above-market salary, bonuses, and other benefits. (*Id.* ¶ 36). As of February 2026, DMMS has recruited at least 27 employees from First Horizon. (*Id.* ¶ 17). Hoefer has not returned the Grant Notice financial awards to First Horizon. (Doc. 21 at 16).

First Horizon sent a letter to Defendant Hoefer in early January 2026 reminding him of the non-solicitation language contained in the Grant Notices. (Doc. 1 ¶ 36). First Horizon sent Defendant Hoefer a second similar letter in early February 2026. (*Id.* ¶ 53). In response to the second letter, Defendant Hoefer's counsel sent First Horizon a letter denying that Defendant Hoefer solicited First Horizon's employees; rather, the letter states, First Horizon's employees left of their own accord. (*Id.* ¶ 54).

Defendants Hoefer and DMMS have agreed to pause recruitment efforts of First Horizon employees until the Court issues this Ruling. (Doc. 29 at 51).

## II.   PROCEDURAL HISTORY

Plaintiff asserts multiple claims against Defendants in its Complaint. Specifically, Plaintiff's Complaint alleges the following:

(1) Defendant Hoefer is actively breaching the non-solicitation agreement in bad faith in violation of Louisiana Civil Code article 1997 with the assistance of DMMS;

(2) Defendant Hoefer, individually and as an agent of DMMS, is engaging in unfair methods of competition and unfair or deceptive acts or practices in the conduct of his business, in violation of the Louisiana Unfair Trade Practices Act ("LUTPA");

(3) Defendant DMMS induced Defendant Hoefer to breach his contract, in violation of Tennessee common law and Tennessee Code Section 47-50-109; and

(4) Defendants Hoefer and DMMS engaged in a civil conspiracy to violate LUTPA, in violation of Louisiana law.

Plaintiff then brought the instant Application for Preliminary Injunction. Plaintiff contends that it is substantially likely to prevail on the merits of two of the aforementioned claims: its bad faith breach of contract claim against Defendant Hoefer with the assistance of Defendant DMMS, and its LUTPA claim against Defendants Hoefer and DMMS. (Doc. 9-1 at 8, 11).

The Magistrate Judge held a conference with the parties ahead of the hearing

4

to discuss a discovery schedule. (Doc. 20). At Defendants' request, the parties stipulated that no expedited discovery for the Preliminary Injunction Application would be necessary if the Court ruled on the following narrow legal issue:

> [Whether the] "Grant Notices," which [First Horizon] contends restrict Hoefer from soliciting [First Horizon's] employees, create an enforceable obligation on Hoefer to refrain from soliciting [First Horizon's] employees. According to Defendants, this legal question is ripe for determination at the April 13, 2026 hearing as part of [First Horizon's] burden to establish its entitlement to an injunction. If the Court finds that the Grant Notices create an enforceable non-solicitation obligation on Hoefer, Defendants will stipulate to an injunction, prohibiting Hoefer and DMMS from soliciting [First Horizon's] employees, subject to Defendants' right to appeal the ruling to the U.S. Fifth Circuit Court of Appeals.

(*Id.* at 2).

Defendants filed an Opposition to Plaintiff's Application for a Preliminary Injunction and Plaintiff filed a Reply. (Doc. 21; Doc. 23). The Court held a hearing on the Application for Preliminary Injunction on April 13, 2026. (Doc. 28). The parties filed post-hearing briefing. (Doc. 30; Doc. 31).

### III.   LEGAL STANDARD

#### A.  Preliminary Injunction.

"A preliminary injunction is an extraordinary and drastic remedy; it is never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008) (internal citations and quotations omitted); *see also Allied Mktg. Grp., Inc. v. CDL Mktg., Inc.*, 878 F.2d 806, 809 (5th Cir. 1989) (preliminary injunctive relief "is an extraordinary remedy and should be granted only if the movant has clearly carried the burden of persuasion with respect to all four factors"); *Miss. Power & Light Co. v.*

*United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985) ("The decision to grant a request for preliminary injunction is to be treated as the exception rather than the rule."). The decision to grant or deny a request for preliminary injunction is within the sound discretion of the Court. *See Allied Mktg. Grp., Inc.*, 878 F.2d at 809.

At all times, the burden of persuasion rests with the plaintiff to establish each of the four elements required for issuance of a preliminary injunction: (1) a substantial likelihood of prevailing on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) the threatened injury outweighs any harm that will result to the non-movant if the injunction is granted; and (4) the injunction will "not disserve the public interest." *See Barton v. Huerta*, 613 Fed. App'x 426, 427 (5th Cir. 2015) (citation omitted). If a plaintiff fails to meet its burden regarding any of the required elements, the Court need not address the other elements necessary for granting a preliminary injunction. *See Roho, Inc. v. Marquis*, 902 F.2d 356, 361 (5th Cir. 1990) (declining to address the remaining elements necessary to obtain a preliminary injunction after finding that the plaintiff failed to show a substantial likelihood of success on the merits); *see also Garden Dist. Book Shop, Inc. v. Stewart*, 184 F. Supp. 3d 331, 335 (M.D. La. 2016). A preliminary injunction should not be granted unless a party demonstrates the above four factors by a "clear showing." *Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1051 (5th Cir. 1997).

**B. Louisiana Bad Faith Breach of Contract Claim.**

Under Louisiana law, a cause of action for breach of contract requires showing: "(1) the obligor's undertaking of an obligation to perform (the contract), (2) the obligor failed to perform the obligation (the breach), and (3) the failure to perform resulted in damages to the obligee." *JMF Med., LLC v. Team Health, LLC*, 490 F. Supp. 3d 947, 973 (M.D. La. 2020). An obliger further violates a contract in "bad faith" if he "intentionally and maliciously fails to perform his obligation." LA. CIV. CODE ANN. art. 1997 cmt. b.

The term "bad faith" "generally implies actual or constructive fraud or a refusal to fulfill contractual obligations, not an honest mistake as to actual rights or duties." *Delaney v. Whitney Nat'l Bank*, 96-2144 (La. App. 4 Cir. 11/12/97), 703 So. 2d 709, 718. Bad faith is not "mere bad judgment or negligence[;] it implies the conscious doing of a wrong for dishonest or morally questionable motives." *Volentine v. Raeford Farms of La., LLC*, 50,698 (La. App. 2 Cir. 8/15/16), 201 So. 3d 325, 338. The Louisiana Civil Code provides that an "obligor in bad faith is liable for all damages, foreseeable or not, that are a direct consequence of his failure to perform." LA. CIV. CODE ANN. art. 1997.

**C. Louisiana Unfair Trade Practices Act.**

LUTPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" LA. STAT. ANN. § 51:1405. "To recover, a plaintiff must 'prove some element of fraud, misrepresentation, deception

or other unethical conduct.'" *IberiaBank v. Broussard*, 907 F.3d 826, 839 (5th Cir. 2018) (internal citations and quotations omitted). "It has been left to the courts to decide, on a case-by-case basis, what conduct falls within the statute's prohibition." *Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc.*, 2009-1633 (La. 4/23/10), 35 So. 3d 1053, 1059.

Courts have determined that "the range of prohibited practices under LUTPA is extremely narrow." *Sabre Indus., Inc. v. Module X Sols., L.L.C.*, No. 23-30122, 2023 WL 8676273 (5th Cir. Dec. 15, 2023) (citing *Cheramie Servs., Inc*, 35 So.3d at 1060). "Therefore, only egregious actions involving elements of fraud, misrepresentation, deception, or other unethical conduct will be sanctioned based on LUTPA." *Id.* (citing *Cheramie Servs., Inc*, 35 So.3d at 1060). "[I]n establishing a LUTPA claim, [a] plaintiff must show that 'the alleged conduct offends established public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious.'" *J&J Sports Prods., Inc. v. Tienda y Taqueiria "La Frontera," LLC*, No. 16-568, 2017 WL 3166734, at *13 (M.D. La. July 25, 2017) (quoting *Quality Env't Processes, Inc. v. I.P. Petroleum Co., Inc.*, 2013-1582 (La. 5/7/14), 144 So. 3d 1011, 1025)). "[C]onduct that offends established public policy and is unethical is not necessarily a violation under LUTPA." *Sedgwick Claims Mgmt. Servs., Inc. v. Dodd*, No. CV 24-2942, 2025 WL 2799032, at *7 (E.D. La. Oct. 1, 2025). Efforts to recruit employees violate LUTPA if they involve "an unlawful or improper

8

purpose" or the use of "unlawful or improper means." *J&J Sports Prods., Inc.*, 2017 WL 3166734 at *13.

### D. Louisiana Revised Statutes Section 23:921.

Louisiana Revised Statutes § 23:921 restricts the application of choice of law clauses in employment contracts unless the employee expressly, knowingly, and voluntarily agrees to and ratifies the choice of law clause:

> The provisions of every employment contract or agreement, or provisions thereof, by which any foreign or domestic employer or any other person or entity includes a choice of forum clause or choice of law clause in an employee's contract of employment or collective bargaining agreement, or attempts to enforce either a choice of forum clause or choice of law clause in any civil or administrative action involving an employee, ***shall be null and void except where the choice of forum clause or choice of law clause is expressly, knowingly, and voluntarily agreed to and ratified by the employee after the occurrence of the incident which is the subject of the civil or administrative action.***

LA. STAT. ANN. § 23:921 (emphasis added).

### IV.    DISCUSSION

Plaintiff seeks a Court Order enjoining Defendants from soliciting First Horizon employees until the alleged non-solicitation clause contained in the Grant Notices expires on May 12, 2027. As noted, to succeed on an application for a preliminary injunction, Plaintiff must establish a substantial likelihood of prevailing on the merits. *See Barton v. Huerta*, 613 Fed. App'x 426, 427 (5th Cir. 2015). Accordingly, the Court begins its inquiry there.

Plaintiff's likelihood of prevailing on the merits hinges on whether the Grant Notices create an enforceable obligation by which Defendant Hoefer is prohibited

9

from soliciting First Horizon employees. Relevant to the enforceability analysis is whether Tennessee or Louisiana law governs.

## A. Whether Tennessee Law or Louisiana Law Governs.

The Grant Notices contain a choice of law provision: "[t]his award is governed by the substantive laws of Tennessee, without regard to conflicts of laws principles." (Doc. 1-1 at 1). The parties do not agree regarding whether Tennessee law or Louisiana law governs the Preliminary Injunction Application. First Horizon argues that Louisiana law governs.[1] Meanwhile, Defendants have not definitively stated whether Tennessee or Louisiana law applies.[2]

In diversity cases such as this one, federal courts apply the substantive laws of the forum state, which in this case is Louisiana. *Wisznia Co. v. Gen. Star Indem. Co.*, 759 F.3d 446, 448 (5th Cir. 2014). Louisiana law permits parties to stipulate in their contracts which state's laws are to govern them. *Waguespack v.*

---

[1] In addition to arguing that Louisiana law applies in its briefing, at the motion hearing, Plaintiff asserted that "Louisiana law definitely controls." (Doc. 29 at 11).

[2] At the motion hearing, the Court asked Defendant Hoefer's counsel what bearing the choice of law provision had at this stage of litigation. Defendant Hoefer's counsel responded: "I believe it has no bearing . . . It does say Tennessee. I agree that in terms of employment law, often Louisiana would want to supply its own law to a Louisiana employee. But here it's an illusory conflict. In neither state would courts invent obligations out of whole cloth when you look at the four corners of the instrument. And so I think it would be a more complicated analysis if Tennessee and Louisiana would come out differently. But neither state would enforce a nonexistent obligation." (Doc. 29 at 31).

Additionally, in their preliminary injunction briefing, Defendants do not clarify whether they believe Tennessee or Louisiana law applies. Defendants state that they "[a]ssum[e] (without admitting) that the contractual choice-of-law provisions are valid," and proceed to analyze the Grant Notices under both Tennessee and Louisiana contract law. (Doc. 21 at 17).

*Medtronic, Inc.*, 185 F. Supp. 3d 916, 925 (M.D. La. 2016) (citing *NCH Corp. v. Broyles*, 749 F.2d 247, 250 (5th Cir. 1985) (summarizing Louisiana choice of law provisions as interpreted by Louisiana courts)). Such contractual stipulations are not honored, however, when doing so would "contravene a strong public policy of the state whose law would otherwise be applicable." *Waguespack*, 185 F. Supp. 3d at 925 (citing LA. CIV. CODE ANN. art. 3540; *Broyles*, 749 F.2d at 250).

Louisiana "has a strong public policy against [] choice of law clauses in employment contracts as indicated by both the text of [Louisiana Revised Statutes § 23:]921(A)(2) and the Louisiana Supreme Court's interpretations." *Waguespack*, 185 F. Supp. 3d at 925 (citing *Sawicki v. K/S Stavanger Prince*, 802 So.2d 598, 606 (La. 2001) ("The requirement that forum selection clauses be expressly, knowingly and voluntarily entered into and ratified after the occurrence of injury [under Louisiana Revised Statutes § 23:921(A)(2)] is a reasonable condition, and is appropriately geared toward Louisiana's public policy decision to allow its state courts to adjudicate claims brought within its jurisdiction.")).

The Louisiana Supreme Court has explained:

Louisiana Revised Statute 23:921(A)(2) is a strong expression of Louisiana public policy concerning forum selection clauses wherein the legislature clearly intended to allow Louisiana courts to adjudicate the claims of plaintiffs who have properly invoked their jurisdiction. Thus, suits validly filed in this state can remain here, despite forum selection clauses to the contrary unless the clause was expressly, knowingly, and voluntarily entered into and ratified after the occurrence of the incident which gives rise to the litigation. The legislature has expressed Louisiana's strong policy with a legitimate concern for providing justice to those parties who would otherwise be entitled to adjudication in a

11

> Louisiana court. . . . The requirement that forum selection clauses be expressly, knowingly and voluntarily entered into and ratified after the occurrence of injury is a reasonable condition, and is appropriately geared toward Louisiana's public policy decision to allow its state courts to adjudicate claims brought within its jurisdiction.

*Waguespack*, 185 F. Supp. 3d at 925, n.11 (citing *Sawicki*, 802 So.2d at 606).

Therefore, for the Court to conclude that Louisiana law applies, the Court must find that: (1) the Grant Notices are "employment contracts or agreements"; and (2) Hoefer did not expressly, knowingly, and voluntarily enter into and ratify the Tennessee choice of law clause.

Plaintiff contends that the Grant Notices are employment agreements subject to Louisiana Revised Statutes § 23:921. (Doc. 29 at 11, 33). Defendants contend that the Grant Notices are not employment contracts but are instead "*sui generis* incentive award[s]" or a "bestowal of incentives subject to strings." (*Id.* at 29). Even so, the parties have not fully briefed whether the Grant Notices qualify as "employment contracts or agreements." Because the parties agreed that discovery was unnecessary for the Court to rule on this Preliminary Injunction Application, the Court lacks important information and context about the Grant Notices to determine whether they are "employment contract or agreements." Similarly, the parties have not fully briefed whether Hoefer expressly, knowingly, and voluntarily entered into and ratified the Tennessee choice of law clause.

Given that the parties agreed that discovery is unnecessary at this stage, the Court is simply unable to conclusively determine which law applies at this time. But

12

even providing Plaintiff the benefit of the doubt and assuming, *arguendo*, that Louisiana law applies for the purpose of this Motion, the Court finds that Plaintiff is not entitled to the relief it seeks at this time.[3]

### B. Whether the Grant Notices Create Enforceable Restriction on Employee Non-Solicitation Under Louisiana Law.

Plaintiff's first claim asserts that Hoefer is breaching obligations created by the Grant Notices in bad faith in violation of Louisiana Civil Code Article 1997 (Plaintiff's "bad faith breach of contract claim"). According to Plaintiff, the "Grant Notices Hoefer accepted and acknowledged constitute valid and enforceable contracts containing valid and enforceable employee non-solicitation restrictions[,]" and Defendant Hoefer is breaching the employee non-solicitation provisions with the assistance of Defendant DMMS by recruiting First Horizon employees. (Doc. 1 ¶¶ 68–69).

Plaintiff's second claim asserts that Hoefer and DMMS's recruitment efforts violate LUTPA because they involve "an unlawful or improper purpose" or the use of "unlawful or improper means" because Defendants' efforts violate the alleged non-solicitation obligation (Plaintiff's "LUTPA claim"). (Doc. 9-1 at 11 (citing *Cheramie Servs., Inc*, 35 So.3d at 1060)).

Plaintiff's likelihood of prevailing on the merits of these two claims hinges on whether the Grant Notices impose an affirmative obligation on Hoefer to refrain from

---

[3] Plaintiff asks the Court to apply Louisiana law to award it the relief it seeks in this Motion.

13

soliciting First Horizon employees. Turning to the pressing question of whether the Grant Notices create an enforceable obligation on Hoefer, the Court begins with the observation that in Louisiana, employee non-solicitation agreements are to be construed according to the general rules of contract interpretation. *See Neill Corp. v. Shutt*, 319 So.3d 872, 878 (La. App. 1 Cir. 2021) (explaining that non-compete agreements are subject to the general rules).

"Interpreting a contract is a matter of determining the parties' common intent." *Brock Servs., LLC v. Rogillio*, 936 F.3d 290, 298 (5th Cir. 2019) (citing LA. CIV. CODE ANN. art. 2045). "When a contract is unambiguous, [courts] look only to the four corners of the contract to interpret it." *Id.* (citing LA. CIV. CODE ANN. art. 2046). "If the terms of a contract are unambiguous—*i.e.*, 'clear and explicit and lead to no absurd consequences'—then 'no further interpretation may be made in search of the parties' intent.'" *NCC Fin., LLC v. Investar Bank, N.A.*, No. CV 20-00137-BAJ-EWD, 2021 WL 1206803, at *3 (M.D. La. Mar. 30, 2021), *aff'd sub nom. In re W Res., L.L.C.*, No. 21-30291, 2022 WL 1117107 (5th Cir. Apr. 14, 2022) (citing LA. CIV. CODE ANN. art. 2046).

Here, the Grant Notices state that "this award will be forfeited, or if already vested [Hoefer] must pay in cash to [First Horizon] the gross pre-tax value of this award measured at vesting, *if* during the restriction period applicable to this award [Hoefer] [solicits]" a First Horizon employee. (Doc. 1-1 at 1 (emphasis added)).

Plaintiff argues that this language imposes an enforceable non-solicitation

14

obligation on Hoefer, citing three cases applying Louisiana law in its briefing. *Martin-Parry Corp. v. New Orleans Fire Detection Serv.*, 221 La. 677, 60 So. 2d 83 (1952); *Buckeye Garment Rental Co. v. Jones*, 276 F. Supp. 560 (E.D. La. 1967); and *Smith, Barney, Harris Upham & Co. v. Robinson*, 12 F.3d 515 (5th Cir. 1994). The *Martin-Parry* court held that the non-solicitation agreement at issue was binding on the former employee. *Martin-Parry Corp.*, 221 La. at 681. The *Buckeye Garment Rental Co.* court held that an employer was entitled to injunctive relief to enforce the non-solicitation agreement at issue. *Buckeye Garment Rental Co.*, 276 F. Supp. at 562. The *Smith, Barney, Harris Upham & Co.* court held the same as the *Buckeye Garment Rental Co.* court. *Smith, Barney, Harris Upham & Co.*, 12 F.3d at 517.

Defendants respond that the non-solicitation agreements in these three cases are materially different than the non-solicitation clause contained in the Grant Notices. In *Martin-Parry Corp.*, the non-solicitation clause provided that the former employee "*would not* 'prior to the termination hereof, or for a period of two (2) years after the termination hereof, disturb, hire, entice away, or in any other manner persuade any employee or dealer of the Company to discontinue his relation to the Company as an employee or dealer[.]'" *Martin-Parry Corp.*, 221 La. at 679–80 (emphasis added). In *Buckeye Garment Rental Co.*, the non-solicitation clause provided that the "[e]mployee further agrees . . . *not to* call upon, solicit, divert, take away, deliver to, sell, service or otherwise deal with Company's customers . . . within twenty-four (24) months . . . and *will not* assist or aid others to do so." *Buckeye*

*Garment Rental Co.*, 276 F. Supp. at 561 (emphasis added). Finally, in *Smith, Barney, Harris Upham & Co.*, the non-solicitation clause stated, "I agree that should my employment with Smith Barney terminate for any reason and I become employed at a competitor organization *I will not* for a one (1) year period directly or indirectly solicit or induce any Smith Barney employee to resign[.]" *Smith, Barney, Harris Upham & Co.*, 12 F.3d at 517 (emphasis added).

Defendants contend that the "the contracts in [the cited] cases—unlike the forfeiture provisions in the Grant Notices—contained terms creating an express and unconditional promise not to solicit[.]" (Doc. 30 at 7). Defendants argue that "[i]nstead, the Grant Notices merely provide that *if* Hoefer chooses to solicit, *then* he will forfeit his incentive awards." (*Id.* at 8 (emphasis in original)). Defendants assert that:

> Hoefer did not assume an absolute obligation not to solicit First Horizon employees; non-solicitation is just a condition of receiving or keeping an economic incentive. In the Grant Notices, Hoefer merely acknowledged that condition—*i.e.*, that he would forfeit his award, or have to repay it to First Horizon, if he solicited. Whether to do so was his choice, albeit one that would come at a price. [U]nder Louisiana law, the Grant Notices do not impose on Hoefer any independent non-solicitation obligation.

(Doc. 21 at 22).

On the record currently before the Court, the Court agrees with Defendants' interpretation of the Grant Notices. In contrast to the cases cited by Plaintiff, the Grant Notices do not contain an express prohibition on employee solicitation. Nowhere in the Grant Notice does Defendant Hoefer unconditionally agree to refrain

16

from recruiting First Horizon's employees. Indeed, the Grant Notices contemplate that Hoefer *might* recruit from First Horizon: "[*I*]*f* during the restriction period applicable to this award [Hoefer] [solicits]" a First Horizon employee, then Hoefer must return the award. (Doc. 1-1 at 1) (emphasis added). As the drafter of the Grant Notices, First Horizon had the opportunity to insert an express, outright prohibition on solicitation in the Grant Notices if it wished ("you may not solicit"), but it did not. For this reason, Plaintiff has not satisfied its burden to show that it is likely to succeed on the merits of its bad faith breach of contract or LUTPA claims.

Assuming *arguendo* that the Grant Notices created an enforceable non-solicitation obligation on Hoefer, the Court does not have a sufficiently developed factual record to find that Plaintiff is likely to succeed on the merits of its bad faith breach of contract or LUTPA claims at this time.

Specifically, with respect to Plaintiff's bad faith breach of contract claim, an obligor acts in "bad faith" if he "intentionally and maliciously fails to perform his obligation." LA. CIV. CODE ANN. art. 1997 cmt. b. The term "bad faith" "generally implies actual or constructive fraud or a refusal to fulfill contractual obligations[.]" *Delaney*, 703 So. 2d at 718. To recover under LUTPA, Plaintiff must prove "some element of fraud, misrepresentation, deception or other unethical conduct." *IberiaBank*, 907 F.3d at 839. Assuming the alleged non-solicitation obligation is enforceable, the Court simply does not have a sufficient factual record to determine that Plaintiff is substantially likely to show that Hoefer "intentionally and

17

maliciously fail[ed] to perform" his obligation or that Hoefer recruited First Horizon employees fraudulently, or through misrepresentation, deception, or other unethical conduct.[4]

Accordingly, Plaintiff's Motion (Doc. 9) will be **DENIED.**

## V.    CONCLUSION

Accordingly,

**IT IS ORDERED** that Plaintiff's **Application for Preliminary Injunction (Doc. 9)** is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' **Motion For Leave To File A Sur-Reply (Doc. 32)** is **DENIED**.

---

[4] Plaintiff's allegation that DMMS offered to indemnify former First Horizon employees should they come to work for DMMS does not currently persuade otherwise for two reasons. (Doc. 1 ¶ 41). First, there is no evidence of such an indemnification agreement in the record. Second, even if DMMS did agree to indemnify former First Horizon employees from legal action that First Horizon may pursue, Plaintiff did not offer legal support for its assertion that such an indemnification agreement shows that Defendants' recruitment efforts were made fraudulently, or through misrepresentation, deception, or other unethical conduct. The Court makes this finding without prejudice to Plaintiff's right to re-urge the argument after discovery and with sufficient legal support.

**IT IS FURTHER ORDERED** that Plaintiff's **Request To File Opposition To Defendants' Motion For Leave To File A Sur-Reply (Doc. 35)** is **DENIED**.

Baton Rouge, Louisiana, this 29th day of May, 2026

_____
**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

19